THE PEOPLE v. CHARLES A. PARKER ET AL.

[See 57 Mich. 69.]

*Forgery—Evidence—Acts and statements of co-respondent—Proof of genuineness of signature.*

1. The testimony of a register of deeds that a careful examination of the records in his office fails to show any transfer of certain land by the grantee in a deed already in evidence, save by an alleged forged deed, is competent for the purpose of showing title to said land in said grantee at time of the alleged forgery.

2. A witness called to testify to the genuineness of a signature cannot compare it with a genuine one affixed to a paper not legally in evidence for some other purpose than such comparison.

3. The doctrine that the acts and declarations of one conspirator in furtherance of the common purpose may be given in evidence against all, whether in their presence or not, is confined to the time intervening between the beginning and ending of the conspiracy, and before thus admissible a *prima facie* case of conspiracy must appear to the trial court.

4. A respondent on trial for the forgery of a deed testified that the instrument was genuine, and was executed on the s me day that the grantor executed another deed offered in evidence, the theory of the defense being that *both* deeds were genuine, and were originally parts of a double blank, and detached on the day of their execution; two witnesses testifying to a careful comparison of the deeds, and that they matched exactly at the top where they had been torn apart.

   *Held,* that the *second* deed was admissible, as was evidence that it was part of the blank to which the forged deed belonged, and that the defense should have been permitted to show that the *second* deed was a *genuine* one, and so treated by the grantor in her life-time, being used upon a public trial before her death; and that, on such proof being made, a comparison between the two signatures would have been proper.

5. A recognizance to appear and answer to an information in a criminal case, as also an affidavit of the respondent for a continuance, are part of the files in the case, and may be used in making comparisons of handwriting.

6. The condition of a party, whether drunk or sober, at the time he signed any paper properly in evidence in a forgery case, and which is sought to be used for the purpose of a comparison of handwriting, is competent evidence.

Exceptions before judgment from Hillsdale. (Howell, J.) Argued June 28, 1887. Decided October 13, 1887.

Respondent was convicted of forgery. Conviction set aside and new trial granted. The facts are stated in the opinion, and in 57 Mich. 69.

*C. E. Weaver*, for respondent.

*Moses Taggart*, Attorney General, for the People.

MORSE, J. The respondent Parker was convicted in the circuit court for the county of Hillsdale upon an information charging him, jointly with Van Alstine and Cleveland, with the crime of forging and uttering a deed to 40 acres of land in said county.

Van Alstine had been previously found guilty, and the affirmance of the verdict in his case by this Court will be found in the case of *People v. Van Alstine*, reported in 57 Mich. 69.

The particulars of the forgery are set forth in the opinion in *Van Alstine's Case*.

A large number of errors are assigned, but we shall only notice such as shall appear to us to be of importance.

The information contains ten counts. In *Van Alstine's Case* this Court passed upon the validity of these counts, and held all of them good save the seventh and eighth. There is no good reason in the present case for any different ruling.

Evidence was introduced by the people of the record of a deed executed in 1869 by one Walters to Eleanor Pelton, and the register of deeds was permitted to testify that a careful examination of the records failed to show any transfer of the

land by Eleanor Pelton, or Eleanor Van Alstine, since that time, save the alleged forged instrument. This was done with the avowed purpose of showing title to the land in Eleanor at the time of the alleged forgery. The evidence was proper.

The probate court files in the estate of Eleanor Pelton, deceased, were offered in evidence by the people, and admitted, against the objection of respondent's counsel. The papers thus admitted included the will, and all the proceedings leading to its probate and allowance, executor's bond and letters testamentary, appraisers' warrant and inventory, notices of commissioners' meetings to audit claims, final account of executor, order allowing same, order of distribution, and discharge of executor.

None of these papers or proceedings were at all material or relevant to the question at issue, and could possibly throw no light upon the case. Yet witnesses were permitted to examine the signature of Eleanor to the will, and compare the same with the signature to the alleged forged deed, and give testimony from such examination and comparison tending to prove the latter signature a forgery.

This was error. Comparisons of this kind can only be made with such writings as are legally in evidence for some other purpose than that of being compared. I can see from the record no reason why the will should have been admitted except for the very purpose for which it was used on the trial, namely, to show that the signature to the deed was a forgery. No other reason was assigned upon the trial, nor upon the argument in this Court.

It is evident that the probate files were introduced for the express purpose of putting the will in evidence, that it might be used as it was used. This cannot be permitted. *Merritt v. Campbell,* 79 N. Y. 625; *Miles v. Loomis,* 75 Id. 291; *Hynes v. McDermott,* 82 Id. 51, 52; *U. S. v. Jones,* 10 Fed.

Rep. 469; *Randolph v. Loughlin,* 48 N. Y. 456. See, also, *Vinton v. Peck,* 14 Mich. 287, 293, 294; *Van Sickle v. People,* 29 Id. 61, 64.

A very important question arising in this case relates to the admission of the statements of Van Alstine, made at various times, in reference to this deed and the ownership of the land, not in the presence or hearing of the respondent Parker, and without his knowledge or consent.

The theory of the prosecution was that Van Alstine, Cleveland, and Parker conspired together to commit this crime, and that the acts and declarations of each in pursuance of the common purpose were evidence against all, whether in their presence or not.

This is true where the acts and declarations sought to be given in evidence are confined to the time intervening between the beginning and ending of the conspiracy. What was said or done by one of the conspirators before the conspiracy was formed, or after its object has been obtained, or its work fully completed, not in the presence or hearing of the others, and not brought to their knowledge and ratified by them, is not admissible against them or either of them.

And before such acts and declarations can be admitted, in any event, a *prima facie* case of conspiracy must appear to the trial court, and then the declarations and acts during the performance of the conspiracy can be submitted to the jury, to be used by them if they find such conspiracy existed, but to be discarded in case it is not established. Such acts and declarations cannot be used to show the conspiracy without other independent evidence.

The first statement made by Van Alstine in reference to this land after the death of his wife, as proven by the people, was to one Thomas J. Lowery, at a religious meeting held near Kelley's Corners. The substance was that he had given Eleanor some hundreds of dollars towards the payment for this land; that he would have had her deed it to him had

he supposed she was going to die, but as it was, he had not "the scratch of a pen to show for it." He asked Lowery what he could do about it, and Lowery advised him to place his claim before the commissioners. Respondent then said: "Tom, can you make out a deed and date it back?" Lowery answered: "No, sir; I cannot." There is no pretense that the respondent ever knew of this conversation, and there is not the slightest warrant anywhere in the testimony that at this time any conspiracy had been formed or thought of between Parker and Van Alstine. On the contrary, the fact of Van Alstine asking Lowery to make a false deed rebuts any idea that he and Parker had agreed together to forge the deed in question. The evidence had a direct tendency to show that at the time of the talk with Lowery no deed from Eleanor to Van Alstine was in existence, and therefore that the deed acknowledged by Parker was a forgery. It was properly used against Van Alstine upon his trial, but as against Parker it was inadmissible; being the declaration of Van Alstine without the presence or sanction of Parker, and before they had joined in a conspiracy to forge and defraud as alleged in the information.

Equally inadmissible was the testimony of Hiller to a conversation had with Van Alstine to the same purport. In May, 1877, Hiller testifies that Parker had a conversation with him nearly of the same nature as that of Van Alstine, which occurred in December, 1876, or January, 1877. It is argued that the similarity of these two talks is evidence of a then existing conspiracy between Van Alstine and Parker to forge a deed of this land. What Parker said was clearly admissible against him, and might be evidence of a conspiracy formed at that time, but it had no tendency to establish a conspiracy existing at the time of Van Alstine's talk with Hiller.

Evidence was also introduced as to what was done and said in the presence of Van Alstine at the time of the appraisal

of the property of the deceased, Eleanor Pelton ; and that, when the appraisers spoke of inventorying this land as the property of Eleanor, Van Alstine made no objection. It is not shown that Parker was in any way connected with this appraisal, or knew anything about it. The appraisal took place in the fall of 1876. It is evident that no conspiracy existed at that time. The evidence was improperly received.

What Van Alstine said to Mercer about having a deed, and the taking of the same out of his pocket and showing it to him, was admissible. There was sufficient evidence tending to show that the deed was a forged one, and, if so, the acknowledgment by Parker was a false one. The object and purpose of the conspiracy was not there ended. It was proper for the jury, if they found a joint combination to defraud then existing between Parker and Van Alstine, to use this testimony against the respondent. The same principle governs the testimony of the witness Pease, as far as his evidence relates to the showing of the deed by Van Alstine, and what the latter said at that time.

The respondent, being examined as a witness in his own behalf, testified that the deed alleged to be forged was a genuine one, and was executed by Eleanor Pelton upon the same day that she and Van Alstine executed and delivered another deed to Edward Cleveland. This latter deed was admitted in evidence in the court, for the purpose, as stated at the trial, of allowing the jury to draw such inferences or conclusions as they might think proper as to the time when the alleged forged deed was made.

The theory of the defense was that both these deeds bore the genuine signature of Eleanor, and were executed by her the same day, and were both originally parts of a double blank, and detached on the day of their execution. Two witnesses testified that they had carefully compared the two deeds, and that they matched completely at the top where they had been torn apart.

It was said in the opinion of Mr. Justice CHAMPLIN in the *Van Alstine Case* that it would not have been error to have excluded all evidence in relation to the Cleveland deed. But in view of the evidence of the respondent in the present case, and the theory of the defense above indicated, it seems to me that it was proper and legitimate to introduce the Cleveland deed in evidence, and to prove that it was a part of the blank to which the deed in question here belonged. The defense also should have been permitted to show that the Cleveland deed was a genuine one, and so treated and regarded by Eleanor Pelton in her life-time, and that it was seen in existence, and used upon a public trial before her death; and, this being allowed, a comparison between the two signatures would have been proper. There was, therefore, error in not permitting this proof to be made. If it were a fact that these two deeds were part of the same double blank, the respondent was entitled to the full weight and bearing of the probabilities arising from such fact. And if the Cleveland deed was a genuine one, and so recognized by Eleanor Pelton, such fact would have a very pertinent bearing upon the point in issue, to wit, the genuineness of the alleged forged deed.

I think it was not error to allow the bonds of the respondents recognizing for their appearance at the circuit to answer the information filed in this cause, and the affidavit of Cleveland for a continuance of the case, to be admitted in evidence, and to be used in making comparisons of the handwriting of Van Alstine and Cleveland. They were part of the files in the cause, and as such belonged to the case, to be used for any material and relevant purpose therein.

Upon the cross-examination of William Mercer, a witness for the people, the counsel for the defendant showed him a note and mortgage, known in the record as the Olds note and mortgage, and asked him to look at them. He then testified, in answer to questions by the same counsel, that he

saw Eleanor Pelton sign these papers, and that he knew her signature to them to be genuine. He was then asked to compare them with the signature to the alleged forged deed, and give his conclusions therefrom. The court did not permit the question to be answered, but said that he would withhold his ruling for the present. Afterwards the matter was renewed upon the examination of a witness for the respondent. The prosecuting attorney, being asked if he disputed the genuineness of the signatures to the Olds note and mortgage, stated that he did. Thereupon the court ruled that the comparison could not be made. This ruling was correct, under the authorities heretofore cited. These papers were not in the case, and there was no purpose for which they could be admitted except for the sake of comparison.

I think it was legitimate to show the condition of Van Alstine, whether drunk or sober, when he made any signature or writing properly in the case.

The Maples deed was rightfully excluded. It was not executed the same day as the Cleveland deed, and had no connection with the alleged forged deed. See *People v. Van Alstine,* 57 Mich. 69, 80.

Upon a careful examination of the charge of the court, I find no errors therein, except in the instructions that the jury might use the evidence of the statements of Van Alstine, which I have heretofore stated were erroneously admitted in evidence. Such requests of the defendant's counsel as were applicable and good law were given in substance, and clearly enough stated to preclude any possible mistake as to their meaning. The qualifications added to others were such as the law authorizes. The charge was fair and plain, and the law correctly stated, except as above noted.

For the errors arising upon the trial, the verdict must be set aside and a new trial granted.

The other Justices concurred.