PEOPLE v VEGA

Docket No. 63076. Decided July 8, 1982. On delayed application by the defendant for leave to appeal, the Supreme Court, in lieu of granting leave to appeal, reversed the defendant's convictions.

Jose Vega and Henry Stevenson were convicted by a jury in the Saginaw Circuit Court, Eugene Snow Huff, J., of delivery of heroin and conspiracy to deliver heroin. Vega's attorney made several objections, on hearsay grounds, to testimony by an undercover state trooper, Philip Maddox, as to statements made by the codefendant, Stevenson, to the state trooper. The trial court instructed the jury that, if they found that the defendants engaged in a conspiracy, what either of them said might be used as evidence against the other. The Court of Appeals, V. J. Brennan, P.J., and M. F. Cavanagh and Hoehn, JJ., affirmed in an unpublished opinion per curiam (Docket No. 28906). Vega appeals.

In an opinion per curiam, signed by Justices Kavanagh, Williams, Levin, Fitzgerald, and Ryan, the Supreme Court held:

Under the common law of Michigan even before adoption of the Michigan Rules of Evidence, whether statements of a conspirator were admissible under an exception to the hearsay rule was for the trial judge to determine and not the jury. Before the statements could be admitted, prima facie evidence of the existence of a conspiracy had to be proved by evidence independent of the conspirator's statements, and the statements could be used only with respect to the substantive offense.

1. Although this case was tried before the adoption of the rules of evidence, the law in effect at that time provided, as the rules of evidence now provide, that the admissibility of evidence is to be determined by the trial judge, and, where the relevancy of the evidence depends upon the fulfillment of a condition of fact, it may be admitted only upon the introduction of evidence sufficient to support a finding of such fulfillment. A rule which put the determination of admissibility in the hands of the jury would not avoid the danger that the jury might

convict a defendant on the basis of the statements without dealing with the question of admissibility. Because of the relevancy and apparent probative value of a conspirator's statements, they may be so highly prejudicial as to color other evidence in the minds of the jurors despite instructions to the contrary, and therefore should be evaluated by the trial judge.

2. Under the common law, before a conspirator's statements may be admitted, prima facie evidence of the existence of the conspiracy must be proved by evidence independent of the conspirator's statements. The statements are admissible only as to the substantive offense after independent evidence of a conspiracy is shown. Any other rule would lift hearsay by its own bootstraps to the level of competent evidence. On the facts of this case, the inference of a conspiracy could not be drawn absent the statements of Stevenson, one of the conspirators. Thus, the prima facie standard was not met.

3. Under the Federal Rules of Evidence, a higher standard appears to be evolving, the preponderance of evidence standard. Should this issue arise during retrial, the trial court shall use the preponderance of evidence standard.

4. Vega's conviction of delivery of heroin must also be reversed. While the jury could reasonably infer that he delivered heroin to Stevenson, that was not the delivery the prosecutor intended to prove nor the one that he argued. The trial judge's remarks to the jury show that the delivery he understood to be charged and that he explained to the jury was that to Maddox, the undercover policeman. Therefore the conviction of delivery was also based on the inadmissible hearsay implicating Vega in the transaction between Maddox and Stevenson.

Reversed and remanded.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Robert L. Kaczmarek,* Prosecuting Attorney, and *Kay F. Pearson,* Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Mardi Crawford)* for defendant.

PER CURIAM. The defendant, Jose Vega, and Henry Stevenson were charged with delivery of

heroin[1] and conspiracy to deliver heroin[2] as a
result of a transaction involving undercover state
police trooper Philip Maddox. We are asked in this
case to evaluate the evidence independent of the
conspiracy to determine whether the predicate
exists for admission of statements of the co-con-
spirator Stevenson. We find that it does not and
emphasize that the trial judge, not the jury, must
make this initial determination of admissibility.

I

A

The key witness against the defendant and Ste-
venson was Maddox. Maddox testified that on
March 13, 1975, he went to Stevenson's home on
Myrtle Street in Saginaw to purchase 1/2 ounce of
heroin. Stevenson told Maddox he did not have
any, but would be able to get it for Maddox.
Maddox and Stevenson then drove to the Las
Vegas Bar. Stevenson left the vehicle and entered
the bar. A few minutes passed before Stevenson
returned and said that he had contacted a source
and that the price would be $600. Stevenson in-
structed Maddox that they were to follow a person
in a white Ford to an unknown location to pur-
chase the heroin. The white Ford stopped at a
corner. Maddox told Stevenson he wanted an ar-
rangement in which he would pay $300 then and
$300 on delivery of the heroin. Maddox gave Ste-
venson the $300, and Stevenson walked over and
got into the white Ford. About a minute later, he
returned to Maddox's vehicle.

The driver of the white Ford then left, and

[1] MCL 335.341(1)(a); MSA 18.1070(41)(1)(a).
[2] MCL 750.157a(a); MSA 28.354(1)(a).

Stevenson told Maddox that the driver had agreed to the terms of payment. Approximately 30 minutes later, the white Ford reappeared and its driver parked in the same spot. A Mexican male emerged and entered a house on that corner. At this point, the narcotics agent identified Vega as the Mexican male who left the Ford and entered the house. Stevenson then got out of the narcotics agent's vehicle with the remaining $300 and went into the same house. Shortly thereafter, Stevenson came out of the house and handed Maddox a tinfoil packet containing what proved to be heroin.

The jury convicted both defendants as charged. The Court of Appeals affirmed Vega's convictions in an unpublished per curiam opinion on April 3, 1979.

## B

Vega's counsel made several objections on hearsay grounds to Maddox's testimony as to statements made by Stevenson to him. The prosecutor stated:

"Your Honor, my position is that by now there is a sufficient showing of concert of action, a common enterprise of a conspiracy or agreement between Mr. Vega and Mr. Stevenson. I believe all the statements of Mr. Stevenson went to that conspiracy and are an exception to this hearsay rule and are admissible against both defendants."

Defense counsel responded that there had not been "any showing, through other proofs, that there was a conspiracy". The trial judge did not directly decide the issue thus framed, but instructed the jury as follows:

"Now, the court will instruct you further that if you find that the two defendants were acting in concert or engaged in a conspiracy, then what either of the two defendants may have said would be used as evidence or can be used as evidence against the other.

"The court will hold at this point that the other evidence of the conspiracy is not necessarily evidence by other persons but evidence of other acts which would indicate the existence of a conspiracy.

"If the jury is of the opinion that there were such as shown by the testimony up to this point to indicate that the two parties were acting together in a conspiracy to sell this heroin to the witness, then the statements which either of the two defendants made may be used against either of the other two defendants.

"The court is trying to inform you briefly as to what the law is on this subject at this time, but as I say, we'll proceed with the evidence, and the court will instruct you further at a later time in the proceedings."

Relying on our decision in *People v Stewart,* 397 Mich 1; 242 NW2d 760 (1976), *modified (On Rehearing)* 400 Mich 540; 256 NW2d 31 (1977), the Court of Appeals found no error in the admission of Stevenson's statements to Maddox:

"Aliunde proof of conspiracy permits hearsay evidence on the theory of principal-agent. The same principle should apply whenever parties engage in a mutual felonious undertaking. It is not necessary to prove that Stevenson *conspired* with Vega to sell heroin to Maddox. Proof that an illegal undertaking was underway is sufficient to permit in evidence transactional statements (res gestae) of one of the participants to explain the existence and nature of the conspiracy itself.

* * *

"We find that a prima facie case of conspiracy was presented by the prosecutor without the statement attributed to Stevenson. A jury could reasonably infer that defendant was knowingly working in concert with Stevenson to deliver heroin to Maddox. The brief peri-

ods Stevenson spent with defendant could support an inference that Stevenson and defendant were working in concert. The nature of the transaction shows an attempt by defendant to conceal his identity from persons who defendant knew were involved."

## II

We address first the role of the trial judge when the prosecutor seeks admission of this kind of evidence. MRE 801(d)(2)(E) does provide for its admissibility.[3] MRE 104, however, provides that conditions for admissibility are to be determined by the trial judge:

"(a) Questions of admissibility generally. Preliminary questions concerning the qualification of a person to be a witness, the existence of a privilege, or the admissibility of evidence shall be determined by the court, subject to the provisions of subdivision (b). In making its determination it is not bound by the Rules of Evidence except those with respect to privileges.

"(b) Relevancy conditioned on fact. When the relevancy of evidence depends upon the fulfillment of a condition of fact, the court shall admit it upon, or subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition."

This rule is identical to FRE 104. Before adoption of this rule, some federal courts gave a role to the jury in determining the admissibility of a coconspirator's statement;[4] since the adoption of the rule, it appears no longer to be an open question[5]

---

[3] "A statement is not hearsay if * * * [t]he statement is offered against a party and is * * * a statement by a coconspirator of a party during the course and in furtherance of the conspiracy on independent proof of the conspiracy."

[4] See, e.g., *United States v Honneus*, 508 F2d 566 (CA 1, 1974), and *Carbo v United States*, 314 F2d 718 (CA 9, 1963).

[5] 1 Weinstein's Evidence, ¶ 104[05], p 104-41.

that it is "incumbent upon the trial judge to determine that a sufficient foundation existed to invoke the hearsay exception". *United States v Eubanks,* 591 F2d 513, 519 (CA 9, 1979). The United States Court of Appeals for the Fifth Circuit, *en banc,* ruled:

"We must look beyond the language of the rule to its underlying policies to determine who should decide the preliminary questions and what standard of proof should control the decision on admissibility. A rule that puts the admissibility of coconspirator statements in the hands of the jury does not avoid the danger that the jury might convict on the basis of these statements without first dealing with the admissibility question. It was this same danger which motivated the Supreme Court to hold in *Jackson v Denno,* 378 US 368; 84 S Ct 1774; 12 L Ed 2d 908 (1964), that a criminal defendant is entitled to have a 'reliable and clear-cut determination of the voluntariness of [his] confession, including the resolution of disputed facts upon which the voluntariness issue may depend', made by someone other than the jury which is to determine his guilt or innocence. *Id.* at 391.

"We are therefore convinced that the preliminary questions of conditional relevance envisioned by Rule 104(b) are those which present no such danger of prejudice to the defendant. They are questions of probative force rather than evidentiary policy. They involve questions as to the fulfillment of factual conditions which the jury must answer.

"The admissibility of a coconspirator's declarations in a conspiracy trial, however, does pose problems precisely because they are relevant. Such evidence endangers the integrity of the trial because the relevancy and apparent probative value of the statements may be so highly prejudicial as to color other evidence even in the mind of a conscientious juror, despite instructions to disregard the statements or to consider them conditionally. As a result, such statements should be evaluated by the trained legal mind of the trial judge." *United States v James,* 590 F2d 575, 579 (CA 5, 1979).

We agree with the federal court's analysis. This case was tried before the MRE were adopted, but the Michigan rule even then appears to have required the decision on admissibility to be made by the judge. *People v Parker,* 67 Mich 222, 225; 34 NW 720 (1887). The trial judge, when defense counsel objected on hearsay grounds, should have made the determination of admissibility rather than leaving that decision to the jury.

### III

The parties agree that before the statements can be admitted, there must be proof of a conspiracy by independent evidence. We added to the federal equivalent of MRE 801(d)(2)(E) the phrase "on independent proof of the conspiracy" to emphasize that very point. 402 Mich cxiv. The additional phrase also recognized our initial decision in *Stewart* that hearsay statements of a co-conspirator were not admissible as an exception to the hearsay rule unless and until the existence of a conspiracy or concert of action was proved for prima facie evidence. The prima facie evidence must be proved independently of the co-conspirator's statements. *People v Heidt,* 312 Mich 629; 20 NW2d 751 (1945). The statements are admissible only as to the substantive offense after independent evidence of a conspiracy is shown. *Parker, supra.* Any other rule "would lift [hearsay] by its own bootstraps to the level of competent evidence". *Glasser v United States,* 315 US 60, 75; 62 S Ct 457; 86 L Ed 680 (1942). The parties disagree as to whether that independent proof exists in this case. Consequently we are called on to apply *Stewart.*

The testimony independent of the statements

was that Maddox went to Stevenson's house to buy heroin and Stevenson had none. Maddox and Stevenson then went to the Las Vegas Bar, where Stevenson left the car and then returned two minutes later. Maddox followed a white Ford with a Mexican male in it to Lapeer and Fifth Street. Maddox gave $300 to Stevenson, who went to the Ford, entered the automobile, and remained for about a minute. Stevenson returned to Maddox's car, the Ford left, and they remained for about 30 minutes until the Ford returned and parked in the same spot on the street. A Mexican male, whom Maddox then identified as the defendant, got out of the Ford and went into the residence at the corner of Lapeer and Fifth Street. Stevenson then got the remaining $300 from Maddox, went into the house after the defendant, and returned a little more than five minutes later with the heroin.

What these facts indicate is that a jury could reasonably infer that defendant Vega delivered heroin to Stevenson. The Court of Appeals believed the brief period Stevenson spent with the defendant could support the inference they were working together; coupled with the fact that the defendant seemed to want to conceal his identity, an inference that defendant knew other persons were involved in the transaction is said to follow. We do not agree that the inference may be reasonably drawn from the facts independent of the hearsay statements that defendant Vega knew the heroin was for someone other than Stevenson, or that he specifically intended to assist Stevenson in the delivery of heroin to Maddox. The so-called concealment of identity indicates no more than that defendant Vega did not want to be identified as a supplier of heroin to Stevenson—an unlawful act. That Stevenson might turn around and deliver

the heroin again to someone else is speculation only, absent the hearsay statements.

The standard consistently employed in Michigan for establishing the conspiracy independent of the statements has been prima facie evidence. *Stewart, supra.* We do not believe the prima facie standard was met here. A higher standard appears to be evolving under FRE 104. Most of the United States Courts of Appeals have adopted the preponderance of the evidence standard. 1 Weinstein's Evidence, ¶ 104[05], pp 104-44.4 *et seq.* If the issue arises on retrial, the judge shall use the preponderance of the evidence standard.

## IV

We must reverse the defendant's delivery conviction as well. A jury could reasonably infer that the defendant delivered heroin to Stevenson, but that is not the theory on which the prosecutor proceeded or what the jury was asked to find in adjudging the defendant guilty of delivery. For example, the information charged that Vega and Stevenson "did then and there manufacture, deliver or possess with intent to manufacture or deliver * * * heroin". This evidences an intent by the prosecutor to prove a delivery to someone other than Stevenson, borne out by his opening statement:

"One thing I want you to think of during this case is that there are two charges as to both. The agreement to sell between the defendants, Vega and Stevenson, as shown by the circumstances and statements, and *secondly, the actual delivery of the heroin that they were both involved in to Trooper Maddox."* (Emphasis added.)

The prosecutor's closing argument again suggests that he was seeking a conviction based on a delivery by defendant and Stevenson to Maddox: "they sold it to a police officer" and "they did it together, therefore they're not only guilty of delivery, they're guilty of conspiracy to deliver".

The trial judge's remarks to the jury indicate that he understood the delivery charged to be one from the defendant and Stevenson to Maddox. For example, in explaining the delivery count of the information, he said it charged that "the same two men did then and there manufacture, deliver or possess with intent to deliver, a controlled substance". In the final instructions, he read the jury the information. Since the delivery conviction was therefore based on the inadmissible hearsay implicating the defendant in the transaction between Maddox and Stevenson, this conviction must also be reversed.

In lieu of granting leave to appeal, pursuant to GCR 1963, 853.2(4), we reverse the defendant's convictions and remand the case to the Saginaw Circuit Court for further proceedings.

KAVANAGH, WILLIAMS, LEVIN, FITZGERALD, and RYAN, JJ., concurred.

COLEMAN, C.J., and BLAIR MOODY, JR., J. We concur with the result for reasons expressed in Part II of the opinion.