# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

V

DAVID BENJAMIN DUNN,

        Defendant-Appellant.

UNPUBLISHED
February 23, 2016

No. 320227
Wayne Circuit Court
LC No. 12-008886-FH

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

V

ANDRE DEMETRIUS COLLINS,

        Defendant-Appellant.

No. 320230
Wayne Circuit Court
LC No. 12-008886-FH

Before: TALBOT, C.J., and WILDER and FORT HOOD, JJ.

PER CURIAM.

Defendants, David Benjamin Dunn and Andre Demetrius Collins, were tried jointly, before a single jury. The jury convicted both defendants of conspiracy to commit perjury in a court proceeding, MCL 750.157a and MCL 750.422, and also convicted Dunn of procuring perjury in a court proceeding, MCL 750.425. The trial court sentenced Dunn to concurrent prison terms of 4 to 20 years for the conspiracy conviction and six months to five years for the procuring perjury conviction, and it sentenced Collins to a prison term of 10 to 20 years for his conspiracy conviction. Both defendants appeal as of right. We affirm.

Dunn, an attorney, formerly represented Collins in a case in which Collins was charged with first-degree premediated murder, MCL 750.316(1)(a), felon in possession of a firearm, MCL 750.224f, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. Detroit Police Sergeant Matthew Gnatek testified that on October 24, 2011, he met with LaTasha Henderson, who said that she had information about the killing of Brad Stewart. Henderson told Gnatek that Collins stated to her that he had shot and killed Stewart.

Henderson said that she and her boyfriend, Antonio Collins, were at her residence when her boyfriend's brother, Collins, and Forman Mills arrived at the house, and that Collins thereafter admitted shooting Stewart. According to Gnatek, the police had no eyewitnesses to Stewart's shooting; therefore, Henderson's statement was crucial to the case.

Henderson testified that on March 2, 2012, she received a letter addressed to her infant daughter. The letter was written by Collins. The letter told Henderson to "[p]lay along with the pigs," but then on the stand "flip your answers differently from what was said the first time." The letter stated that if Henderson lied three times on the stand, she would be found to be an untrustworthy witness. The letter also told Henderson to meet with defendant's attorney and he would "coach" her through it. Henderson testified that, several days later, she received a second letter from Collins. In the second letter, Collins asked Henderson to testify that she never heard him say anything about the shooting of Stewart.

Collins also made several calls while incarcerated. In one call, he stated that his attorney would not get paid until he fixed the case. In another call, Collins stated that, after meeting with Dunn, everything was great.

Henderson testified that she received telephone calls from Dunn on February 8, 11, 19, and 25, 2012. She stated that she went to Dunn's law office on March 7, 2012. Henderson's sister and daughter accompanied her to the office. Henderson stated that Dunn told her that if she did not remember what Collins said, she just did not remember, and that she could not be convicted of perjury if she did not remember something. Henderson also stated that Dunn told her that she was the person who could put Collins in jail or keep him out of jail, and that two other witnesses were "on board" with the plan to testify a certain way. Henderson responded that she *did* remember what Collins had said. At the meeting, Dunn allegedly touched Henderson's sister inappropriately, which led Henderson to contact the police. She informed the police both of what Dunn had said at the meeting and regarding the incident with her sister.

Henderson went to Dunn's office again on March 13, 2012 and she wore a wire provided to her by the police. Dunn was heard on the recording telling Henderson that she would not get in trouble if she said that she could not remember the content of statements made by Collins.

Dunn was arrested on March 19, 2012. In the third amended felony information, Dunn was charged with 11 separate counts and Collins with three separate counts. Of relevance, count one charged Dunn and Collins with "CONSPIRACY TO COMMIT PERJURY – INCITING OR PROCURING PERJURY, COURT PROCEEDING., and alleged that Dunn and Collins conspired "to procure LaTasha Henderson to commit the crime of perjury as a witness." Count one of the information cited MCL 750.157a, MCL 750.422, MCL 750.424, and MCL 750.425.

Collins was convicted of first-degree murder, felon in possession of a firearm, and felony-firearm on September 19, 2012, in relation to the killing of Stewart. On November 13, 2012, Collins was sentenced to life imprisonment without parole for the first-degree murder

conviction, three to five years for the felon-in-possession conviction, and two years for the felony-firearm conviction.[1]

In the instant case, the prosecution filed a motion in limine seeking a finding by the trial court that defendants engaged in a conspiracy and, for that reason, the recorded conversation, letters, and jail calls were admissible under MRE 801(d)(2)(E). Defendants argued that independent proof of a conspiracy had not been produced. The trial court noted that the prosecution was required to establish by a preponderance of the evidence and through independent evidence that a conspiracy existed, that the statement sought to be admitted was made during the course of the conspiracy, and that the statement furthered the conspiracy. The trial court ruled as follows:

> And I appreciate that you're saying if I make this ruling, I'm finding there's a conspiracy, but I'm only finding by a preponderance of the evidence, that is not beyond a reasonable doubt.
>
> I have to make a finding before the tapes or the letters or the phone calls can be admitted during this trial. This is something I certainly can make a ruling on, if there's evidence within these documents and tapes themselves.
>
> And with regard to that point, there are obviously statements in Mr. Collins letters to LaTasha Henderson that said, talk to my "L" he'll coach you through it.
>
> There are references to already having an agreement with his lawyer. And in the tape of the transcript of the meeting on March 13th, there are two instances where Mr. Dunn makes statements saying that—on Page 32, it says—Ms. Henderson says, ain't this making me look bad?
>
> Mr. Dunn: No, no, I'm going to make the prosecutor look bad.
>
> Ms. Henderson says, and then you're to make—you're really going to make Andre and then Tony and his family, they're going to really believe that.
>
> And Mr. Dunn says, no, no, no, they're going to know exactly where we're going with this. They're not going to believe that.
>
> Ms. Henderson says, you already talked to them?
>
> Mr. Dunn says, uh-hum, uh-hum, they understand.
>
> And Ms. Henderson says, are you sure?

---

[1] In *People v Collins*, unpublished opinion per curiam of the Court of Appeals, issued April 17, 2014 (Docket No. 313769), this Court affirmed the convictions.

And Mr. Dunn says, uh-hum.

So that's some indication that he's doing this with Mr. Collins' cooperation.

And then we also have him, we have reference to—on Page—let's see, hold on just a moment.

On Page 49, Ms. Henderson says, and you talked to Terrance already?

And Mr. Dunn says, uh-hum, I talked to Terrance.

Ms. Henderson says, and what did he say he's going to do?

Mr. Dunn says, he's right on board.

And then and Sharday (ph) too?

And Mr. Dunn says, uh-huh, oh yeah, Sharday on board too. I talked to Sharday, Terrance, everybody.

And that was on Page 49 of the same transcript of the taped conversation between LaTasha Henderson and Mr. Dunn.

And interestingly, Terrance Collins took the stand in the murder trial and said, I don't remember, basically and was unavailable to testify, because of lack of memory.

Based on just those statements within the transcript from the March 13th meeting with LaTasha Henderson, I find there's independent evidence with regard to Mr. Dunn's participation in the conspiracy.

And then on—with regard to Mr. Collins' participation in the conspiracy, in his letters where he refers to, talk to my "L" he'll coach you through it, I find by a preponderance of the evidence, that evidence of a conspiracy exists through the independent evidence.

Obviously the tape of the March 13th conversation is admissible against Mr. Dunn and the letter is admissible against Mr. Collins and so those are independent evidence.

And then because of this finding, I'm also stating that those statements were made during the course of the conspiracy and that the statements furthered the conspiracy.

And so therefore I am ruling that these exhibits will be admissible in the trial.

Also before trial, the prosecution sought to clarify that count one of the third amended felony information alleged that Dunn and Collins conspired to commit perjury, MCL 750.422, not procure perjury, MCL 750.425. Accordingly, the offense was punishable by life, rather than five years' imprisonment. The prosecution argued that the conspiracy was completed upon an agreement being reached, regardless of whether the perjury actually occurred. Thus, the prosecution sought to amend count one of the information to omit any reference to procuring or inciting.

Dunn argued that because the allegations were 1) that Dunn and Collins conspired to attempt to procure or try to convince Henderson to commit perjury, 2) that perjury was never committed, and 3) that Henderson never had the intent to commit perjury, MCL 750.425 applied because no perjury was ever committed.

The trial court granted the prosecution's motion to amend the information. The trial court found no unfair surprise in granting the amendment because MCL 750.422 was cited in the original information. The trial court also concluded that conspiracy does not require actual commission of the crime.

On the morning of the first day of trial, Collins arrived at the courtroom in shackles. A deputy stated that Collins had refused to be searched before leaving his cell and had thrown punches at the deputy. The trial court noted that the previous day, at a hearing, Collins had made an obscene gesture to a prosecutor and had attempted to lunge out of his chair. Collins stated that he believed that the trial court was prejudiced against him due to his conviction of murder, but indicated that he would behave if he were allowed to be in the courtroom without shackles. The trial court found that Collins was a security risk and gave him the option of sitting at the defense table while wearing shackles, or listening to the proceedings from a holding cell behind the courtroom. Collins chose to be in the courtroom and be shackled.

Counsel for Dunn moved to sever the trials to avoid potential prejudice from having his client sit next to a shackled Collins. The trial court denied the request, noting that Dunn would not be shackled and opining that the jury would follow the court's instruction to consider each defendant's case separately.

At trial, Officer Gnatek and Henderson testified to pertinent events as noted above. Anthony Collins, the father of Collins, testified that Henderson called him and told him that she lied when she testified at the preliminary examination, and that she intended to leave town. Anthony Collins stated that he called Dunn and asked Dunn to speak with Henderson.

Dunn testified that in December 2011 a client advised him that Collins wished to speak with him. Dunn stated that he spoke to Collins in the Wayne County Jail. Dunn stated that he had several conversations with Collins and also with Collins's then current attorney, and that eventually he became attorney of record in the case in which Collins was charged with first-degree murder. Dunn testified he reviewed the record and noticed that Henderson's statement contradicted those made by other persons. Dunn stated that after he spoke with Anthony Collins, he called Henderson to tell her she should come to court as scheduled. Dunn stated that subsequently, Henderson called him and stated that she needed to speak with him.

Dunn stated that he had in-person meetings with Henderson on March 7 and 13, 2012. Dunn stated that he had no plan before the second meeting to attempt to persuade Henderson to change her testimony. Dunn stated that he told Henderson to come to court and to tell the truth. Dunn stated that he had no meeting of the mind with Collins regarding Henderson's testimony. Dunn acknowledged that he told Henderson that if she did not remember something Collins said, then she did not remember it, but he denied telling her to testify that she did not remember something.

Collins testified and acknowledged sending a letter to Henderson, but he denied writing that all she had to do was lie three times and she would lose credibility as a witness. Collins stated that he wrote that all she had to do was *not* lie three times and she would lose credibility. Collin maintained that Henderson had erased the word "not" from his letter. Collins denied that he and Dunn agreed to persuade Henderson to commit perjury.

The jury convicted Dunn of conspiracy to commit perjury in a court proceeding and procuring perjury in a court proceeding, but acquitted Dunn of several other charges. The jury convicted Collins of conspiracy to commit perjury in a court proceeding, but also acquitted him of several other charges.

At sentencing, Dunn's counsel argued that Dunn should be sentenced on the grid for a class "E" offense, with a maximum sentence of five years' imprisonment, rather than on the grid for a class "B" offense, for which the maximum sentence if life imprisonment. The trial court denied the request.

Thereafter, Dunn moved for a new trial, arguing that he was denied his right to confront Henderson on various grounds. Collins concurred in the motion. The trial court denied the motion. Dunn also moved for a new trial on the grounds that he was prejudiced by the trial court's failure to sever the trials. The trial court also denied that motion. The trial court observed that Collins's pretrial behavior warranted placing him in shackles. In addition, the trial court noted that Dunn's counsel asked prospective jurors if the sight of Collins in shackles would influence their decisions about Dunn, and that the jurors responded in the negative, except one who was dismissed. The jurors were also instructed that they could not consider the fact that Collins was in shackles.

Dunn also moved for judgment notwithstanding the verdict (JNOV) on the grounds that (1) he was subjected to double jeopardy based on his conviction of procuring perjury in a court proceeding and conspiracy to commit perjury in a court proceeding; and (2) an attorney cannot be held liable under a conspiracy theory for conduct the attorney engaged in while acting for the sole purpose of protecting the interests of his or her client. The trial court denied the motion on both grounds.

In Docket No. 320227, Dunn first argues that the prosecution abused its discretion by charging him with conspiracy to commit perjury under MCL 750.157a and MCL 750.422 because the charge did not fit the facts of the case. We disagree.

A "prosecutor has discretion to bring any charges supported by the evidence." *People v Nichols*, 262 Mich App 408, 415; 686 NW2d 502 (2004). We review a prosecutor's charging

decision for an abuse of discretion. An abuse of discretion occurs if a prosecutor's charging decision contravenes the constitution or a statute. *People v Barksdale*, 219 Mich App 484, 488; 556 NW2d 521 (1996).

Dunn was charged with conspiracy to commit perjury in a court proceeding under MCL 750.157a(a) and MCL 750.422. MCL 750.157a(a) provides:

> Any person who conspires together with 1 or more persons to commit an offense prohibited by law, or to commit a legal act in an illegal manner is guilty of the crime of conspiracy punishable as provided herein:

> (a) Except as provided in paragraphs (b), (c) and (d) if commission of the offense prohibited by law is punishable by imprisonment for 1 year or more, the person convicted under this section shall be punished by a penalty equal to that which could be imposed if he had been convicted of committing the crime he conspired to commit and in the discretion of the court an additional penalty of a fine of $10,000.00 may be imposed.

Regarding the crime of conspiracy, this Court has stated:

> A criminal conspiracy is a partnership in criminal purposes, under which two or more individuals voluntarily agree to effectuate the commission of a criminal offense. *People v Justice (After Remand),* 454 Mich 334, 345; 562 NW2d 652 (1997). The individuals must specifically intend to combine to pursue the criminal objective, and the offense is complete upon the formation of the agreement. *Id.* at 345-346. The intent, including knowledge of the intent, must be shared by the individuals. *Id.* at 346. Thus, there must be proof showing that "the parties specifically intended to further, promote, advance, or pursue an unlawful objective." *Id.* at 347. Direct proof of a conspiracy is not required; rather, "proof may be derived from the circumstances, acts, and conduct of the parties." *Id.* [*People v Jackson*, 292 Mich App 583, 588; 808 NW2d 541, 548 (2011).]

MCL 750.422 provides:

> Any person who, being lawfully required to depose the truth in any proceeding in a court of justice, shall commit perjury shall be guilty of a felony, punishable, if such perjury was committed on the trial of an indictment for a capital crime, by imprisonment in the state prison for life, or any term of years, and if committed in any other case, by imprisonment in the state prison for not more than 15 years.

"The elements of perjury are (1) the administration to the defendant of an oath authorized by law, by competent authority; (2) an issue or cause to which facts sworn to are material; and (3) wilful false statements or testimony by the defendant regarding such facts." *People v Forbush*, 170 Mich App 294, 301; 427 NW2d 622 (1988).

In addition, Dunn was charged with procuring perjury in a court proceeding, contrary to MCL 750.425, which provides:

> Any person who shall endeavor to incite or procure any person to commit the crime of perjury, though no perjury be committed, shall be guilty of a felony, punishable by imprisonment in the state prison not more than 5 years.

Dunn does not dispute that the facts fit the crime of procuring perjury. However, because no perjury was ever committed, Henderson never intended to commit perjury, and there was no evidence that Dunn himself intended to commit perjury, Dunn argues that the prosecution was required to charge him under MCL 750.425, conspiracy to procure perjury, rather than MCL 750.422, conspiracy to commit perjury, on the basis that MCL 750.425 is a more specific statute. We disagree.

"The specific charge to file against a defendant is a decision that rests in the prosecutor's discretion, and such decisions will be reviewed for an abuse of that discretion." *People v Yeoman*, 218 Mich App 406, 413; 554 NW2d 577 (1996). While the facts fit the crime of procuring perjury, the facts also fit the crime of conspiracy to commit perjury. The prosecution's theory was that Dunn and Collins conspired to persuade Henderson to testify falsely at Collins's murder trial. Specifically, they agreed that Henderson would willfully testify under oath to facts that were material to Collins's trial—namely, that she did not recall hearing Collins admit to killing Stewart. The evidence showed that Dunn and Collins voluntarily agreed to "effectuate the commission of" perjury. *Jackson*, 292 Mich App at 588. They "combine[d] to pursue the criminal objective" of persuading Henderson to commit perjury. *Id.* In doing so, they "specifically intended to further, promote, advance, or pursue an unlawful objective." *Id.* (citation and quotation marks omitted). While Dunn contends that the agreement was only to procure perjury, it is evident that if the conspiracy had succeeded, the crime of perjury, not merely procuring perjury, would have been committed.[2]

We are mindful that a conspiracy requires at least two individuals who specifically intend to combine to pursue the criminal objective. *Jackson*, 292 Mich App at 588. Dunn and Collins shared that intent. Thus, it is of no consequence that Henderson did not actually or genuinely intend to commit perjury and did not actually commit perjury. The crime was completed when Dunn and Collins formed the agreement. *Id.* And although "legal impossibility" may be a valid defense against a conspiracy charge, "factual impossibility is not a defense[.]" *People v Tinskey*, 394 Mich 108 (1975);[3] see also *United States v Williams*, 553 US 285, 300; 128 S Ct 1830; 170 L Ed 2d 650 (2008) ("As with other inchoate crimes—attempt and conspiracy, for example—impossibility of completing the crime because the facts were not as the defendant believed is not

---

[2] Along those lines, Dunn's sentence for the conspiracy conviction was properly based on the underlying offense being perjury. See MCL 750.157a(a).

[3] We recognize that the pertinent holding in *Tinskey* was recognized as obiter dictum by *People v Thousand*, 465 Mich 149, 163; 631 NW2d 694 (2001), but we nevertheless find *Tinskey* persuasive here.

-8-

a defense."); 15A, CJS Conspiracy, § 156 ("The rule as to factual impossibility applies even when the reason for the impossibility is that certain acts essential to the conspiracy's success are to be carried out by individuals who turn out to be government agents."). Because the allegations and evidence supported the charge of conspiracy to commit perjury under MCL 750.157a and MCL 750.422, the prosecution did not lack discretion to bring that charge against Dunn.

Dunn next argues that Collins's appearance before the jury in shackles at their joint trial and the trial court's refusal to sever the trials prejudiced Dunn's own ability to receive a fair trial. We disagree.

> Included within the right to a fair trial, absent extraordinary circumstances, is the right to be free of shackles or handcuffs in the courtroom. While this right is not absolute, a defendant "may be shackled only on a finding supported by record evidence that this is necessary to prevent escape, injury to persons in the courtroom or to maintain order." But even if a trial court abuses its discretion and requires a defendant to wear restraints, the defendant must show that he suffered prejudice as a result of the restraints to be entitled to relief. "[A] defendant is not prejudiced if the jury was unable to see the shackles on the defendant." [*People v Payne*, 285 Mich App 181, 186; 774 NW2d 714 (2009) (citations omitted).]

The trial court required that Collins be shackled during trial for security reasons. The trial court's decision is supported by the record and, thus, there was no abuse of discretion.

Nonetheless, Dunn argues that the shackling of Collins prejudiced his trial and, therefore, the trial court should have granted his motion to sever the trials. A decision to sever or join defendants is reviewed for an abuse of discretion. *People v Duranseau*, 221 Mich App 204, 208; 561 NW2d 111 (1997). MCR 6.121(C) provides: "On a defendant's motion, the court must sever the trial of defendants on related offenses on a showing that severance is necessary to avoid prejudice to substantial rights of the defendant."

Dunn failed to show that severance was necessary to avoid prejudice to his substantial rights. Dunn himself was not shackled and the trial court instructed the jury to decide each case individually. A jury is presumed to follow its instructions, *People v Abraham*, 256 Mich App 265, 279; 662 NW2d 836 (2003), and Dunn has not provided any basis for overcoming this presumption. Indeed, the jury acquitted Dunn of several additional charges, which militates against any finding of prejudice. Therefore, we reject this claim of error.

In Docket No. 320230, Collins argues that the trial court erred by finding by a preponderance of the evidence that the alleged conspiracy had been established by independent evidence before trial and, therefore, the statements of alleged co-conspirators Dunn and Collins could be admitted against one another under MRE 801(d)(2)(E). We disagree.

As a general rule, a trial court's evidentiary decisions are reviewed for an abuse of discretion. However, preliminary question regarding whether a statute or rule precludes the admission of evidence presents an issue of law that is reviewed de novo. *People v Martin*, 271 Mich App 280, 315; 721 NW2d 815 (2006), aff'd 482 Mich 851 (2008).

In *Martin*, 271 Mich App at 316-317, this Court stated:

> Hearsay is a "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c). However, a statement is not hearsay if the statement is offered against a party and is "a statement by a coconspirator of a party during the course and in furtherance of the conspiracy on independent proof of the conspiracy." MRE 801(d)(2)(E).

> The proponent of evidence bears the burden of establishing its relevance and admissibility. *Gilbert v DaimlerChrysler Corp*, 470 Mich 749, 781; 685 NW2d 391 (2004). In order to qualify under the exclusion for statements by a coconspirator, the proponent of the statements must establish three things. First, the proponent must establish by a preponderance of the evidence that a conspiracy existed through independent evidence. *People v Vega*, 413 Mich 773, 780; 321 NW2d 675 (1982). A conspiracy exists where two or more persons combine with the intent to accomplish an illegal objective. *People v Blume*, 443 Mich 476, 481-482; 505 NW2d 843 (1993). It is not necessary to offer direct proof of the conspiracy. *People v Justice (After Remand)*, 454 Mich 334, 347; 562 NW2d 652 (1997). Instead, it is "sufficient if the circumstances, acts, and conduct of the parties establish an agreement in fact." *People v Atley*, 392 Mich 298, 311; 220 NW2d 465 (1974), overruled on other grounds by *People v Hardiman*, 466 Mich 417, 428 (2002). Circumstantial evidence and inference may be used to establish the existence of the conspiracy. *People v Gay*, 149 Mich App 468, 471; 386 NW2d 556 (1986). Second, the proponent must establish that the statement was made during the course of the conspiracy. *People v Bushard*, 444 Mich 384, 394; 508 NW2d 745 (1993). The conspiracy continues "until the common enterprise has been fully completed, abandoned, or terminated." *Id.* Third, the proponent must establish that that the statement furthered the conspiracy. *Id.* The requirement that the statements further the conspiracy has been construed broadly. *Id.* at 395. Although idle chatter will not satisfy this requirement, statements that prompt the listener, who need not be one of the conspirators, to respond in a way that promotes or facilitates the accomplishment of the illegal objective will suffice. *Id.*

The statements in Collins's letters to Henderson and jail calls were admissible against Collins. MRE 801(d)(2)(A) (providing that a party's own statement offered against the party is not hearsay). The statements in the letters and calls to the effect that Dunn would coach Henderson on how to testify in the murder trial and that his attorney would not get paid until he fixed the case supported an inference that Dunn and Collins had agreed to attempt to persuade Henderson to commit perjury. Thus, those statements constituted evidence of a conspiracy. See *Justice (After Remand)*, 454 Mich at 347; *Blume*, 443 Mich at 481-482. The statements in the letters and calls also constituted independent evidence of the conspiracy in that they were independent of Dunn's statements. MRE 801(d)(2)(E). Therefore, the trial court did not err in holding that Dunn's statements were admissible against Collins. To the extent that Collins argues that it was error for the trial court to rule on this evidentiary question before trial, any error was harmless because independent evidence of the conspiracy was presented at trial. See

-10-

*People v Lukity*, 460 Mich 484, 496; 596 NW 2d 607 (1999) ("[A] preserved nonconstitutional error is not a ground for reversal unless 'after an examination of the entire cause, it shall affirmatively appear' that it is more probable than not that the error was outcome determinative." (citation omitted)).

Finally, Collins argues that the evidence at trial was insufficient to support his conviction of conspiracy to commit perjury because there was no evidence that either he or Dunn intended to commit perjury in the murder trial. We disagree.

In reviewing a sufficiency of the evidence question, this Court views the evidence in a light most favorable to the prosecution to determine whether a rational trier of fact could conclude that the elements of the charged offense were proven beyond a reasonable doubt. *People v Bulls*, 262 Mich App 618, 623; 687 NW2d 159 (2004). We must "draw all inferences and make credibility choices in support of the jury verdict." *Id.* at 623-624. (citation and quotation marks omitted).

Again, there was evidence, including Collins's letters and calls and Dunn's recorded statements, that Dunn and Collins conspired to persuade Henderson to testify falsely at Collins's murder trial. Specifically, they agreed that Henderson would willfully testify under oath to facts that were material to Collins's trial—namely, that she did not recall hearing Collins admit to killing Stewart. The evidence showed that Dunn and Collins agreed to "effectuate the commission of" perjury. *Jackson*, 292 Mich App at 588. They "combine[d] to pursue the criminal objective" by persuading Henderson to commit perjury. *Id.* In doing so, they "specifically intended to further, promote, advance, or pursue an unlawful objective." *Id.* (citation and quotation marks omitted). It is evident that if the conspiracy had succeeded, the crime of perjury, not merely procuring perjury, would have been committed.

While a conspiracy requires at least two individuals who specifically intend to combine to pursue the criminal objective, Dunn and Collins shared that intent. *Jackson*, 292 Mich App at 588. Thus, it is of no consequence that Henderson did not actually or genuinely intend to commit perjury and did not actually commit perjury. The crime was completed when Dunn and Collins formed the agreement. *Id.* Accordingly, there was sufficient evidence to support Collins's conviction of conspiracy to commit perjury.

Affirmed.

/s/ Michael J. Talbot
/s/ Kurtis T. Wilder
/s/ Karen M. Fort Hood

-11-