PEOPLE v. PAYNE.

1. SEDUCTION—EVIDENCE.

In a prosecution for seduction, evidence that prosecutrix's mother was insane, and that her father had not cared for her since she was 14 years old, was improperly admitted, but, being merely preliminary, did not, of itself, constitute ground for a reversal.

2. SAME.

Subsequent acts of intercourse cannot be shown on a trial for seduction.

3. SAME—CROSS-EXAMINATION OF PROSECUTRIX.

In a prosecution for seduction, where the proof of the charge made depended almost wholly on the testimony of the prosecutrix, and she testified that the act of intercourse relied on occurred between 11 and 12 o'clock p. m., but admitted on

cross-examination that she had testified on the preliminary examination that it occurred at about 9:30 p. m., and that such testimony was false, an objection to a question as to why she had given such former false testimony was erroneously sustained.

4. TRIAL—CONDUCT OF COUNSEL.
Where, notwithstanding repeated rulings of the trial court, counsel continues to put questions in an objectionable form, he cannot complain if he is somewhat severely reprimanded.

5. SAME—SEDUCTION—ADVERSE WITNESS—SURPRISE.
Where respondent's counsel in a prosecution for seduction called a witness to show that he had sustained illicit relations with prosecutrix prior to the alleged seduction, but the witness denied that he had done so, counsel was entitled to examine the witness with a view to showing that he had previously made a different statement to counsel; not as a matter of substantive proof, but merely to show the jury why the witness had been called, that respondent might not be , prejudiced.

6. SAME—IMPROPER REMARKS OF PROSECUTOR.
Statements by the prosecuting attorney in his address to the jury in a prosecution for seduction, characterizing the mode of defense as "brutal, cowardly, and contemptible," charging respondent's counsel with falsifying, and with having "raked the purlieus of hell" for evidence against prosecutrix, commenting on the superlative villiany of respondent and the extreme baseness of his crime, and suggesting that, if prosecutrix had a father or a brother, there would have been no occasion for a trial, were erroneously permitted, and ground for a reversal.

7. SAME.
In a prosecution for seduction, in which respondent had not testified, the prosecuting attorney said in his argument that no one saw what occurred at the time of the alleged seduction except prosecutrix, respondent, and the allseeing eye of God, and that prosecutrix had told her story, and there was not a word to prove that it was untrue. *Held,* to constitute a reference tó respondent's failure to testify, not permissible under 3 Comp. Laws, § 10211.

8. SEDUCTION—INFORMATION—TIME OF OFFENSE.
An information for seduction charged the offense to have been committed on October 22d. The prosecutrix had testified before the examining magistrate that it occurred on that

date, but had also fixed the time as the first time she had intercourse with respondent, and on the date when they attended a certain entertainment. An investigation disclosed that this entertainment was on September 22d, and on the trial prosecutrix testified that the seduction was on that date. *Held,* that it was not error to permit a conviction as for an offense committed on September 22d.

Exceptions before judgment from Muskegon; Russell, J. Submitted June 5, 1902. (Docket No. 97.) Decided September 30, 1902.

Charles Payne was convicted of seduction. Reversed.

*Dan T. Chamberlain,* for appellant.

*Charles B. Cross,* Prosecuting Attorney, and *George S. Lovelace,* Assistant Prosecuting Attorney, for the people.

MOORE, J. The respondent was convicted of the crime of seduction. He has brought the case here on exceptions before judgment. The errors assigned may be grouped: *First,* errors in the admission and rejection of testimony; *second,* the language, conduct, and instructions of the trial judge; *third,* the language of the prosecuting attorney upon the trial and in his address to the jury. We have considered all the assignments of error, but will discuss only part of them.

The prosecution were allowed to show that prosecutrix's mother was insane, and her father did not care for her after she was 14 years of age. This testimony might well have been omitted, but, as it was preliminary simply, we should not be inclined to reverse the case if there were no other errors in it.

The information charged the offense to have been committed October 22d. The testimony showed it was committed September 22d. After this testimony was given, the people were allowed to show acts of intercourse in November and December, and that pregnancy resulted

therefrom. This was contrary to the rule laid down in *People*'v. *Clark*, 33 Mich. 112; *Boyce* v. *People*, 55 N. Y. 644.

The complaining witness was examined in the court below. In the circuit court she testified that the intercourse occurred between 11 and 12 o'clock. On her cross-examination she admitted that she testified in the court below that the intercourse occurred about half past 9 o'clock, and that it was not true. She was then asked, "Then why did you tell it?" The circuit judge sustained an objection to this question. The proof of the charge made against the respondent depended almost wholly upon the testimony of the complaining witness. The respondent was entitled to whatever benefit might be derived from a proper cross-examination, and we think he was entitled to an answer to this question.

Complaint is made of the attitude of the judge towards respondent's counsel. The record discloses a situation that must have been very unpleasant. There had been repeated rulings in relation to a type of questions. It is difficult to believe counsel did not know how to frame the question so it would be unobjectionable, and it is also apparent he studiously avoided doing so. Under the circumstances we are not inclined to criticise the action of the judge towards counsel about which complaint is made.

Counsel called a witness for the purpose of showing that complaining witness had sustained illicit relations with him, and was not chaste when it is claimed respondent seduced her. Instead of the witness testifying to the illicit relations, he denied they had occurred. Counsel claimed to be surprised, and sought to show that witness had made a different statement to counsel before he was called as a witness. He was not allowed to do this. The authorities are not agreed as to the rule, but we think the weight of the authority is that he might examine the witness upon the point to which his attention was directed. 3 Taylor, Ev. (9th Ed.) p. 978[30]; 2 Best, Ev. (1st Am. Ed.) p. 1080; 1 Greenl. Ev. (16th Ed.) p. 565; *Webber*

v. *Jackson*, 79 Mich. 175 (44 N. W. 591, 19 Am. St. Rep. 165). Counsel ought to have been allowed to show by the witness, if he could, that the witness had made a different statement; not as substantive proof, but as explaining why he had called him, so that the jury should not be prejudiced by his having done so.

The record discloses that intense feeling was shown by the attorneys upon both sides. The argument of counsel for respondent does not appear. That of the assistant prosecuting attorney does. In the course of his argument he used the following language:

"It has been my good fortune to participate in the trial of many causes, to be in the court-room and see many causes tried; but I want to tell you that never in my experience have I sat in the court-room and seen the brutal, cowardly, and contemptible defense that has been made in this case.

"*Mr. Chamberlain:* I take an exception to that statement. Does the court think that is proper?

"*The Court:* I don't know whether it is or not.

"*Mr. Lovelace:* And I will prove it to you, gentlemen of the jury. * * * I say that because a man is hired to defend a man charged with crime he has a right to use all the legal means to acquit his client; he has no right to stand here in the court-room and dispute the decisions of the court; he has no right to stand here in the court-room, and, without any foundation whatever, knowingly and willfully stand before a jury and state what he knows is not so.

"*Mr. Chamberlain:* I will take an exception to that statement.

"*Mr. Lovelace:* He has no right to rake the purlieus of hell for evidence against a woman, and, when he finds that he cannot do it, to stand before you and tell that the witnesses for whose credibility he vouches are perjurers. That may be the ethics of the legal profession in some States; it is not in the State of Michigan. * * * Why, it is only at this term of court that some of your members sitting upon this jury sent a man to State's prison because he had broken into a store and stolen a couple of pairs of pants; and yet shall this man, who has broken into a woman's life, and filched from it all that makes her life worth living, and cast her out to be the scorn of the com-

munity, to go on perhaps down the road to hell itself, and abandoned her—

"*Mr. Chamberlain:* Take an exception to this statement.

"*Mr. Lovelace:* Shall he go unwhipped of justice? Why, there is no more comparison between the two crimes than there is between light and darkness. * * * Why, I sat here in the court-room the other day, and I saw that poor unfortunate girl as she sat there in that stand, her eyes streaming with tears, as she told the story of her downfall. Was it any wonder? She was detailing that which cast her out from society, that marked her as distinctive from our wives and daughters, that rendered her an outcast in society, so that, if she came to your door or mine, it would be closed against her. Tears, wasn't it? And I saw this noble young man sit there with a smile playing about his lips.

"*Mr. Chamberlain:* I object to that.

"*Mr. Lovelace:* Glorying in the ruin he had done.

"*Mr. Chamberlain:* I take an exception to the statement. * * *

"*Mr. Lovelace:* That kind of business won't be tolerated in any decent community. It won't be tolerated in this community. Why, we know that in some portions of this country this man wouldn't be here being tried today; and I want to say to you that if this girl had a father—

"*Mr. Chamberlain:* An exception.

"*Mr. Lovelace:* Or a brother, he wouldn't be here being tried today, because, if he had not repaired the wrong that he had done, he would have made a good place to sink a lead shaft; and I believe that that, as it is carried on in the Southern States, is a protection to the virtue of women. When a man realizes that he cannot trespass upon the rights of others unless he takes his life in his hands, he is going to watch out.

"*Mr. Chamberlain:* The testimony in this case is that she has got a father, your honor. The counsel is not within the testimony.

"*Mr. Lovelace:* If I don't keep any nearer the testimony than you do, I will quit the argument right off.

"*Mr. Chamberlain:* I will take an exception to that statement, too.

"*Mr. Lovelace:* I am going to prove it to you before I get done. I will show you that both this Mr. Chamberlain and Mr. Turner have not come within 40 rows of apple trees of telling the testimony. * * * My brother

can quibble all he wants to; he can get up here and falsify the testimony; but it never will change the facts.

"*Mr. Chamberlain:* I take an exception to that statement."

While a great deal of latitude should be given to counsel, we think the excerpts from the argument we have given are objectionable, and come within *People* v. *Lange,* 90 Mich. 454 (51 N. W. 534); *People* v. *Cahoon,* 88 Mich. 456 (50 N. W. 384); and the cases cited therein.

The respondent was not called as a witness. In his argument the assistant prosecuting attorney said:

"Now, wasn't this girl seduced? What is the testimony? Where is the testimony that says she was not? There wasn't anybody that saw what occurred there except this girl, this boy, and the allseeing eye of God. The girl has told you her story, and from the beginning to the end of this case there is not a word to prove that she didn't tell exactly what occurred."

Section 10211 of the Compiled Laws provides "that the defendant in any criminal case shall only at his own request be deemed a competent witness, and his neglect to testify shall not create any presumption against him, nor shall the court permit any reference or comment to be made to or upon such neglect." We think there is much force in the claim of counsel that "the only possible result of this kind of remarks was to direct the attention of the jury particularly to the fact that the respondent had not testified at all in contradiction of the girl. It could mean and did mean nothing else."

We now come to the errors assigned in relation to the charge of the court. The court called the attention of the jury to the fact that the information charged the offense to have occurred October 22d; that the proof disclosed the seduction occurred, if it occurred at all, September 22d; and that, having put in proof as to the date, they were bound by it; and said: "As I say, if the evidence does not show you, beyond all reasonable and fair doubt, that Rosa Pierce was seduced on the 22d of September, your

verdict will be 'Not guilty.'" It is true that, before the magistrate, the complaining witness fixed the time as being Saturday evening, October 22d, but she also fixed it as being the first time she had intercourse with the respondent; that it was in the dining room of the house where she was employed, and was in the evening, after she had attended a certain show at the opera-house. It was disclosed that the witness was mistaken as to the date, but not as to the occurrence; that the date when she attended the show was September 22d, instead of October 22d. The case is very unlike *People* v. *Bressler, ante,* 390 (91 N. W. 639). The charge was a guarded one and a proper one.

For the errors we have pointed out, the conviction is reversed, and a new trial ordered.

HOOKER, C. J., and MONTGOMERY, J., concurred with MOORE, J. GRANT, J., concurred in the result.