PEOPLE v CENTERS

Docket No. 70872. Submitted March 9, 1984, at Grand Rapids.—
Decided March 18, 1985. Leave to appeal applied for.

Thaddeus C. Centers was convicted by a jury in Genesee Circuit
Court of first-degree murder, conspiracy to commit armed
robbery, and assault with intent to commit armed robbery and
was sentenced, Harry B. McAra, J. Defendant appealed. *Held:*

1. The trial court erred in admitting posthypnotic testimony
by Kelly Faulkner, one of the victims of the crimes, and
testimony concerning her identification of suspects at a pos-
thypnotic lineup, since Faulkner had not identified the suspects
before the hypnotism session. On remand, the circuit court
shall not admit any posthypnotic testimony or testimony con-
cerning posthypnotic statements unless it is demonstrated that
the testimony is based solely on facts recalled and related by

REFERENCES FOR POINTS IN HEADNOTES

[1-4] 75 Am Jur 2d, Trial § 57.
Right of accused to have evidence or court proceedings interpreted.
36 ALR3d 276.
[4] 81 Am Jur 2d, Witnesses § 413.
[5] 5 Am Jur 2d, Appeal and Error § 703.
42 Am Jur 2d, Infants §§ 43, 56.
[6] 24 Am Jur 2d, Divorce and Separation § 974 *et seq.*
42 Am Jur 2d, Infants §§ 28 *et seq.,* 43, 56.
59 Am Jur 2d, Parent and Child § 25.
[7] 24 Am Jur 2d, Divorce and Separation § 979.
42 Am Jur 2d, Infants § 42.
[8] 24 Am Jur 2d, Divorce and Separation § 979.
59 Am Jur 2d, Parent and Child § 26.
Award of custody where contest is between child's parents and
grandparents. 31 ALR3d 1187.
Award of custody of child where contest is between child's mother
and grandparent. 29 ALR3d 366.
[9] 24 Am Jur 2d, Divorce and Separation § 1003 *et seq.*
42 Am Jur 2d, Infants § 57.
59 Am Jur 2d, Parent and Child § 44.
[10] 24 Am Jur 2d, Divorce and Separation § 974.
42 Am Jur 2d, Infants § 51.
Parent's disability or handicap as factor in custody award or
proceedings. 3 ALR4th 1044.

the witness or declarant prior to hypnosis and the party offering the testimony establishes its reliability by clear and convincing evidence.

2. The trial court erred in admitting into evidence a police officer's account of a statement Faulkner made to her shortly after the crimes. The court erroneously held that the statement fell within the excited utterances exception to the hearsay rule. The statement was insufficiently spontaneous to qualify as an excited utterance.

3. The trial court erred in admitting into evidence preliminary examination testimony by a witness that Centers' codefendant had told her of the robbery and shooting and had implicated Centers. Hearsay evidence as to statements made by a coconspirator after the conspiracy has ended is not admissible. The testimony involved in this case is hearsay since the coconspirator's statements were not made during the course and furtherance of the conspiracy.

4. The trial court did not err in admitting into evidence photographs of the scene of the crime, including the body of the murder victim.

5. The prosecutor impermissibly commented on defendant's failure to testify by arguing that his evidence was uncontradicted or unexplained where contradiction or explanation could only come from defendant.

Reversed and remanded.

1. CRIMINAL LAW — WITNESSES — HYPNOSIS.

Posthypnotic testimony of witnesses in criminal cases tried after December 23, 1982, or cases pending on appeal on that date, if the issue of the admissibility of posthypnotic testimony was raised, is admissible provided that the testimony is based solely on facts recalled and related by the witness prior to hypnosis and the party offering the testimony establishes its reliability by clear and convincing evidence.

2. APPEAL — CRIMINAL LAW — CONSTITUTIONAL LAW — APPOINTMENT OF COUNSEL.

The Michigan Constitution gives the accused in every criminal prosecution an appeal as a matter of right, and the federal constitution requires appointment of counsel to represent an indigent defendant on an appeal by right (Const 1963, art 1, § 20).

3. CRIMINAL LAW — RIGHT TO COUNSEL.

The right to assistance of counsel on appeal is meaningless unless it is the right to reasonably effective assistance of counsel.

4. CRIMINAL LAW — EVIDENCE — HEARSAY — EXCITED UTTERANCES — RULES OF EVIDENCE.

A statement, in order to qualify as an excited utterance exception to the hearsay rule, must arise out of an occasion startling enough to produce nervous excitement and to render the statement spontaneous and unreflecting, it must be made before there is time to contrive or misrepresent, and it must relate to the circumstances of the startling occasion (MRE 803[2]).

5. CRIMINAL LAW — EVIDENCE — HEARSAY — EXCITED UTTERANCES — RULES OF EVIDENCE.

A statement is not necessarily disqualified as an excited utterance merely because it was made in response to questioning, but such questioning is a factor to be considered and may show that the statement was insufficiently spontaneous; another factor tending to show lack of spontaniety is a prior statement by the declarant concerning the incident (MRE 803[2]).

6. CONSPIRACY — EVIDENCE — STATEMENTS OF CO-CONSPIRATORS — RULES OF EVIDENCE.

A statement made by a co-conspirator of a defendant during the course and in furtherance of the conspiracy is admissible, once there has been independent proof of the conspiracy, as an admission by the defendant and is not hearsay (MRE 801[d][2][E]).

7. CONSPIRACY — CIRCUMSTANTIAL EVIDENCE.

The essence of the offense of conspiracy is an unlawful agreement between two or more persons; a formal agreement is unnecessary as long as sufficient circumstantial evidence is presented to support a fair inference of an agreement in fact.

8. CONSPIRACY — EVIDENCE — STATEMENTS OF CO-CONSPIRATORS — RULES OF EVIDENCE.

Statements made by a co-conspirator of a defendant after the conspiracy has ended are not admissible as admissions by the defendant (MRE 801[d][2][E]).

9. CONSPIRACY — SUBSTANTIVE OFFENSES — SUBSEQUENT ACTS.

A conspiracy may continue even after the substantive crime which was the primary object of the conspiracy is complete until financial and other arrangements among the conspirators are also complete; subsequent acts taken to conceal the conspiracy's crime do not show a continuation of the conspiracy.

10. CONSPIRACY — EVIDENCE — STATEMENTS OF CO-CONSPIRATORS — RULES OF EVIDENCE.

Statements made by a co-conspirator of a defendant during the

course of a conspiracy are not admissible as admissions by the defendant unless they were also made in furtherance of the conspiracy; a statement is not made in furtherance of a conspiracy unless it advances or promotes some object of the conspiracy (MRE 801[d][2][E]).

11. CRIMINAL LAW — PHOTOGRAPHS.

Photographs of the scene of a crime, including the body of a murder victim, may be admitted into evidence if they are substantially necessary or instructive to show material facts or conditions but must not be admitted if they are merely calculated to excite passion or prejudice; admission of such photographs is committed to the sound discretion of the trial judge, who must balance the probative value of the photographs against their prejudicial effect.

12. CRIMINAL LAW — EVIDENCE — PROSECUTORIAL COMMENT.

The bounds of proper argument are exceeded by a prosecutor's argument that his evidence was uncontradicted or unexplained if contradiction or explanation could only come from the defendant.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Robert E. Weiss,* Prosecuting Attorney, and *Donald A. Kuebler,* Chief, Appellate Division, for the people.

Thaddeus Centers, *in propria persona.*

Before: MACKENZIE, P.J., and J. H. GILLIS and J. E. FITZGERALD,* JJ.

J. E. FITZGERALD, J. After a jury trial, defendant was convicted of first-degree murder, MCL 750.316; MSA 28.548, conspiracy to commit armed robbery, MCL 750.157a; MSA 28.354(1) and MCL 750.529; MSA 28.797, and assault with intent to commit armed robbery, MCL 750.89; MSA 28.284. Defendant was sentenced to imprisonment for concurrent terms of life, from 35 to 55 years, and from 33 to 55 years, and this Court granted his application for a delayed appeal.

* Circuit judge, sitting on the Court of Appeals by assignment.

## I

Defendant argues that the trial court erred by admitting posthypnotic testimony by one of the victims of the crimes, Kelly Faulkner, and testimony concerning Faulkner's identification of suspects at a posthypnotic lineup. This case arises out of an attempted robbery of a convenience store in Burton, Michigan, in the early hours of June 19, 1980. Kelly Faulkner was the store clerk on duty at the time of the crimes. Also present was Rick Allen Blackmer, an acquaintance of Faulkner. The robbery was attempted by two men. In the course of the attempt, Blackmer was shot and mortally wounded. The prosecution's theory was that the two men were defendant and one of his codefendants, Charles McIntosh.

Kelly Faulkner gave two statements to police officers on the day of the crimes. On July 1, 1980, Faulkner was hypnotized by an officer of the Burton Police Department. The hypnotism session was tape-recorded. Particular answers were not suggested by anything said to Faulkner while she was under hpynosis, but the hypnotist suggested to Faulkner that her memory of the crimes would become more clear as time passed. The lineup at issue took place on March 3, 1981.

In *People v Gonzales,* 415 Mich 615, 627; 329 NW2d 743 (1982), the Court addressed the problem of posthypnotic testimony:

"[W]e hold that until hypnosis gains general acceptance in the fields of medicine and psychiatry as a method by which memories are accurately improved without undue danger of distortion, delusion, or fantasy, and until the barriers which hypnosis raises to effective cross-examination are somehow overcome, the testimony of witnesses which has been tainted by hypnosis must be excluded in criminal cases.

"We do not foreclose, by this opinion, the use of hypnosis as an extremely useful investigative tool. A party could preserve a witness's prehypnotic testimony by using an MRE 804(b)(1) deposition. After the hypnotic session, the subject would be considered 'unavailable as a witness'."

The Court subsequently reconsidered its opinion on its own motion and entered an order adding the following language, 415 Mich 627:

"This opinion should not be read as determining the question of the admissibility of this witness's testimony concerning facts she was able to recall and relate prior to hypnosis, a question which is reserved until raised on an adequate record in an appropriate case."

In *People v Nixon,* 421 Mich 79; 364 NW2d 593 (1984), the Court answered the question raised by its order in *Gonzales.* The Court held that posthypnotic testimony is admissible provided that it is based solely on facts recalled and related by the witness prior to hypnosis and the party offering the testimony establishes its reliability by clear and convincing evidence. For guidance in determining the reliability of posthypnotic testimony, the Court commended for examination standards stated in *State ex rel Collins v Superior Court for Maricopa County,* 132 Ariz 180; 644 P2d 1266 (1982), and *People v Hughes,* 59 NY2d 523; 466 NYS2d 255; 453 NE2d 484 (1983).

The Court in *Nixon* also held that its decision in *Gonzales* would apply only to cases tried after the date of that decision and to those cases pending on appeal when *Gonzales* was decided in which the issue was raised. *Gonzales* was decided on December 23, 1982.

Here, defendant was sentenced in circuit court on May 26, 1982. This Court granted defendant's

application for a delayed appeal on October 26, 1983. The panel which granted defendant's application found that defendant had made a timely request in circuit court for appointment of appellate counsel pursuant to GCR 1963, 785.11 and GCR 1963, 803.1, but that the appellate counsel appointed to represent defendant had negligently failed to file a timely claim of appeal. The appellate counsel was assessed costs for his negligence, and defendant elected to discharge him and to proceed with this appeal *in propria persona.* Because the issue concerning hypnotism was raised and extensively litigated in circuit court, it is apparent that, but for the negligence of defendant's appointed appellate counsel, this would have been a case pending on appeal when *Gonzales* was decided in which the issue was raised.

The Michigan Constitution gives the accused in every criminal prosecution an appeal as a matter of right. Const 1963, art 1, § 20. The federal constitution requires appointment of counsel to represent an indigent defendant on an appeal by right, *Douglas v California,* 372 US 353; 83 S Ct 814; 9 L Ed 2d 811 (1963), although no such requirement exists for a discretionary appeal. *Ross v Moffit,* 417 US 600; 94 S Ct 2437; 41 L Ed 2d 341 (1974). In *Evitts v Lucey,* 469 US —; 105 S Ct 830; 83 L Ed 2d 821 (1985), the Court recognized that the right to assistance of counsel on appeal is meaningless unless it is the right to reasonably effective assistance of counsel and held that a criminal defendant was denied due process when his appeal by right was dismissed due to his retained counsel's negligent failure to comply with state procedural rules for perfecting the appeal.

The findings of the previous panel demonstrate that this defendant was not effectively assisted by his appointed appellate counsel. Under the circum-

stances presented here, the appropriate remedy is to treat this case as if a timely claim of appeal had been filed by the appointed appellate counsel and to apply *Gonzales.*

Admission here of evidence concerning Kelly Faulkner's identification of suspects at a posthypnotic lineup was reversible error. Because Faulkner had not identified the suspects before the hypnotism session, her identification was not something recalled and related before hypnotism. Because the identity of the criminals was a central issue at trial, admission of this testimony cannot be regarded as harmless error.

On remand, the circuit court shall not admit any posthypnotic testimony or testimony concerning posthypnotic statements unless it is demonstrated that the testimony is based solely on facts recalled and related by the witness or declarant prior to hypnosis and the party offering the testimony establishes its reliability by clear and convincing evidence.

We will address other issues raised by defendant to prevent them from arising on remand.

## II

Defendant argues that the trial court erred by admitting into evidence a police officer's account of a statement Kelly Faulkner made to her shortly after the crimes. The trial court held that the statement fell within the exception to the rule against hearsay for "excited utterances", MRE 803(2). That rule allows admission of "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition". To qualify as an excited utterance, a statement must arise out of an occasion startling enough to pro-

duce nervous excitement and to render the statement spontaneous and unreflecting, it must be made before there is time to contrive or misrepresent, and it must relate to the circumstances of the startling occasion. *People v Gee,* 406 Mich 279, 282; 278 NW2d 304 (1979); *People v Kreiner,* 415 Mich 372, 379; 329 NW2d 7816 (1982). A statement is not necessarily disqualified as an excited utterance merely because it was made in response to questioning, but such questioning is a factor to be considered and may show that the statement was insufficiently spontaneous. *Holtz v L J Beal & Son, Inc,* 339 Mich 235, 240; 63 NW2d 627 (1954); *People v Hungate,* 27 Mich App 496, 498-499; 183 NW2d 634 (1970). Another factor tending to show lack of spontaneity is a prior statement by the declarant concerning the incident. See *People v Fenner,* 136 Mich App 45, 48-49; 356 NW2d 1 (1984).

Here, the first officers arriving at the scene found Kelly Faulkner talking on the telephone to the police radio dispatcher. The officer to whom Faulkner made the statement was the fourth officer to arrive on the scene. According to the officer, a lieutenant who arrived at the scene about five minutes later instructed her to take Faulkner to a police cruiser and to obtain a statement and any additional information that could be broadcast over the police radio. The officer observed that Faulkner was quite pale and concluded that she was in a mild state of shock. The officer placed Faulkner in the back seat of a police cruiser and talked to her for a while to calm her down. Eventually, Faulkner gave the officer a description of the criminals and an account of the crimes. The officer testified that Faulkner's statement was one of the longest excited utterances she had ever heard.

This evidence demonstrates that Kelly Faulkner's statement was insufficiently spontaneous to qualify as an excited utterance. Faulkner had made a prior statement concerning the incident to the police radio dispatcher and made the statement at issue in response to questioning by the officer. Moreover, the officer elicited the statement from Faulkner only after isolating her and speaking to her to calm her down. The officer and Faulkner intended their discussion to produce a detailed statement for use by the police in the course of their investigation. A statement elicited in such circumstances is exactly the opposite of spontaneous and unreflecting. The trial court erred by admitting the statement as an excited utterance.

## III

Defendant argues that insufficient evidence of a conspiracy to rob independent of the admissions of defendant and his co-conspirators was admitted at trial. On independent proof of the conspiracy, a statement made by a co-conspirator of the defendant during the course and in furtherance of the conspiracy is admissible as an admission by the defendant and is not hearsay. MRE 801(d)(2)(E). In *People v Atley*, 392 Mich 298, 311; 220 NW2d 465 (1974), the Court explained that the essence of the offense of conspiracy is an unlawful agreement between two or more persons and that direct proof of a formal agreement is unnecessary as long as sufficient circumstantial evidence is presented to support a fair inference of an agreement in fact.

The evidence here showed an attempted robbery by two men acting in concert. The concerted activity of the two armed robbers supports a fair inference of an agreement in fact between the robbers

to commit an armed robbery. Fingerprint evidence at the scene of the crimes supports a fair inference that the robbers were defendant and his codefendant, Charles McIntosh.

We note that in *People v Vega,* 413 Mich 773, 782; 321 NW2d 675 (1982), the Court abandoned the old "prima facie evidence" test and held that the independent proof of the conspiracy required by MRE 801(d)(2)(E) must be proof by a preponderance of the evidence. We need not decide whether *Vega* should be applied retroactively to this case because ample evidence was presented here to satisfy either standard.

The preliminary examination testimony of Beverly Alexander was admitted into evidence at trial pursuant to MRE 804(b)(1). Alexander's testimony included statements codefendant Charles McIntosh made to her after the robbery when the robbers had returned to the house defendant shared with Alexander and others. The statements by Charles McIntosh at issue were an account of the robbery and shooting implicating defendant. Defendant argues that McIntosh's statements should not have been admitted pursuant to MRE 801(d)(2)(E) because they were not made during the course and in furtherance of the conspiracy.

Statements made by a co-conspirator after the conspiracy has ended are not admissible pursuant to MRE 801(d)(2)(E) because they were not made during the course of the conspiracy. See *People v Stewart,* 397 Mich 1, 8-9; 242 NW2d 760 (1976); see also, *Krulewitch v United States,* 336 US 440; 69 S Ct 716; 93 L Ed 790 (1949), and *Grunewald v United States,* 353 US 391; 77 S Ct 963; 1 L Ed 2d 931 (1957). A conspiracy may continue even after the substantive crime which was the primary object of the conspiracy is complete until financial and other arrangements among the conspirators

are also complete. *People v Scotts,* 80 Mich App 1, 5-6; 263 NW2d 272 (1977); *People v Losey,* 98 Mich App 189, 199-200; 296 NW2d 601 (1980), *rev'd on other grounds* 413 Mich 346; 320 NW2d 49 (1982). However, subsequent acts taken to conceal the conspiracy's crime do not show a continuation of the conspiracy. See *Grunewald v United States, supra,* 353 US pp 401-402:

"[A]fter the central criminal purposes of a conspiracy have been attained, a subsidiary conspiracy to conceal may not be implied from circumstantial evidence showing merely that the conspiracy was kept a secret and that the conspirators took care to cover up their crime in order to escape detection and punishment. As was there stated, allowing such a conspiracy to conceal to be inferred or implied from mere overt acts of concealment would result in a great widening of the scope of conspiracy prosecutions, since it would extend the life of a conspiracy indefinitely. Acts of covering up, even though done in the context of a mutually understood need for secrecy, cannot themselves constitute proof that concealment of the crime after its commission was part of the initial agreement among the conspirators. For every conspiracy is by its very nature secret; a case can hardly be supposed where men concert together for crime and advertise their purpose to the world. And again, every conspiracy will inevitably be followed by actions taken to cover the conspirators' traces. Sanctioning the Government's theory would for all practical purposes wipe out the statute of limitations in conspiracy cases, as well as extend indefinitely the time within which hearsay declarations will bind co-conspirators."

At the time Charles McIntosh made the statements at issue to Beverly Alexander, the crime which was the object of the conspiracy was complete, and the conspirators had avoided all immediate pursuit and reached a place of temporary safety. No evidence suggests that any proceeds of the crimes remained to be divided or that any

other arrangements between the conspirators remained to be completed. The prosecution points to testimony indicating that Alexander subsequently concealed the clothing worn by Charles McIntosh during commission of the crimes. Alexander testified that Charles McIntosh did not tell her to hide the clothes. No evidence links defendant to the hiding of the clothes or suggests in any way that the conspirators actually agreed to take such steps to conceal their guilt. *Grunewald* shows that an overt act of concealment like the hiding of the clothes cannot support an inference that the conspiracy was still continuing. The statements at issue were not made during the course of the conspiracy.

Moreover, even statements made during the course of a conspiracy are not admissible pursuant to MRE 801(d)(2)(E) unless they were also made in furtherance of the conspiracy. A statement is not made in furtherance of a conspiracy unless it advances or promotes some object of the conspiracy. *People v Trilck,* 374 Mich 118, 122-128; 132 NW2d 134 (1965). No evidence suggests how any object of the conspiracy could have been advanced or promoted by Charles McIntosh's giving an account of the crimes to Beverly Alexander. The trial court erred by admitting Alexander's testimony concerning the statement at issue.

IV

Defendant argues that the trial court erred by admitting photographs of the scene of the crimes showing the body of the murder victim. Such photographs may be admitted if they are substantially necessary or instructive to show material facts or conditions but must not be admitted if they are merely calculated to excite passion or

prejudice. *People v Falkner,* 389 Mich 682, 685; 209 NW2d 193 (1973). Admission of such photographs is committed to the sound discretion of the trial judge, who must balance their probative value against their prejudicial effect. *People v Eddington,* 387 Mich 551, 563; 198 NW2d 297 (1972).

The photographs at issue here were not particularly gruesome or otherwise likely to excite passion or prejudice. The photographs were substantially necessary to show a material fact: the identity of the perpetrators of the crimes. Defendant's fingerprints were found on a piece of plastic broken off the cash register drawer. The photographs show the victim's body, coins spilled from the cash register, and the piece of plastic in close association on the floor next to the counter on which the register sat. The photographs, together with other testimony, support an inference that defendant's fingerprints were left on the piece of plastic during the robbery rather than before the robbery. A reasonable inference from the evidence is that the fingerprints were left on the piece of plastic when it was broken off the register drawer, and the association of the piece of plastic, the coins, and the body on the floor near the register supports an inference that the piece of plastic was broken off the register drawer during the robbery. On this record, the trial court did not err by admitting the photographs.

V

In closing argument, the prosecutor told the jury that the fingerprint evidence in this case was "totally uncontradicted" and "completely unexplained". Defendant now contends that the prosecutor's argument was an impermissible comment

on defendant's failure to testify. See *Griffin v California,* 380 US 609; 85 S Ct 1229; 14 L Ed 2d 106 (1965). Generally, such argument is not improper. *People v Parker,* 307 Mich 372; 11 NW2d 924 (1943); *People v White,* 401 Mich 482, 512; 257 NW2d 912 (1977). However, the bounds of proper argument are exceeded by a prosecutor's argument that his evidence was uncontradicted or unexplained if contradiction or explanation could only come from the defendant. *People v Payne,* 131 Mich 474, 480; 91 NW 739 (1902), *People v White, supra,* p 512; *United States v Robinson,* 651 F2d 1188 (CA 6, 1981); Anno: *Comment or Argument by Court or Counsel that Prosecution Evidence is Uncontradicted as Amounting to Improper Reference to Accused's Failure to Testify,* 14 ALR3d 723, 730-743.

Although the prosecutor here could properly argue, for example, that the expert testimony identifying the fingerprints as those of defendant was uncontradicted, the argument made here exceeded the bounds of propriety, because only defendant could explain how, if he was innocent, his fingerprints came to be at the scene of the crimes.

Reversed and remanded for further proceedings consistent with this opinion. We retain no jurisdiction.