# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

TIMOTHY SCOTT BYWATER,

       Defendant-Appellant.

UNPUBLISHED
May 21, 2015

No. 320338
Ingham Circuit Court
LC No. 12-001000-FC

Before: BOONSTRA, P.J., and SAAD and MURRAY, JJ.

PER CURIAM.

Defendant appeals by right his convictions, following a jury trial, of unlawful imprisonment, MCL 750.349b, assault with intent to commit criminal sexual conduct (CSC) involving penetration, MCL 750.520g(1), three counts of accosting a minor for immoral purposes, MCL 750.145a, attempted first-degree CSC (CSC I), MCL 750.520b(2)(b) (victim under 13, defendant 17 or older), second-degree CSC (CSC II), MCL 750.520c(2)(b) (victim under 13, defendant 17 or older), two counts of indecent exposure, 750.335a, and indecent exposure by a sexually delinquent person, MCL 750.335a(2)(c). The trial court sentenced defendant as a habitual offender (second), MCL 769.10, to concurrent prison terms of 180 to 270 months for the unlawful imprisonment conviction, 120 to 180 months for the assault with intent to commit CSC involving penetration conviction, 48 to 72 months for each of the accosting a minor for immoral purpose convictions, 60 to 90 months for the attempted CSC I conviction, 180 to 270 months for the CSC II conviction, 365 days for each of the indecent exposure convictions, and 281 to 720 months for the indecent exposure by a sexually delinquent person conviction. The trial court also sentenced defendant to lifetime electronic monitoring under MCL 750.520n. He was further ordered to pay $130 to the Crime Victim's Fund, $644 in state costs, $500 in attorney fees, and $500 in court costs. We affirm, but remand to the trial court for further proceedings to establish a factual basis for the $500 in court costs or to alter that figure, if appropriate.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

The charges in this case arise from a series of sexual crimes against minors that occurred between March 18 and July 10 of 2012.

## A. MARCH 18, 2012 INCIDENT

The first incident occurred on March 18, 2012 at Maranatha Church in Lansing. Five-year-old JG was playing with his friend in the children's classroom in the lower level of the church while his father conducted a youth group practice in the upper level sanctuary of the church. When JG's friend went up to the sanctuary, JG used the door in the lower level of the church to go outside. According to JG, a white man approached him and entered the church with him. JG's friend observed JG talking with a stranger when she returned to the lower level of the church and immediately ran back upstairs to tell JG's father.

As JG's father was walking down the stairs, he saw a man exit the boys' bathroom. According to JG's father, the man had dirty blonde hair and was wearing a white tank top, dark shorts, and glasses, and he had a scraggly face. The man mumbled, "I don't know" when JG's father asked him who he was and what he was doing. At that point, JG came out of the same boys' bathroom crying loudly, visibly scared, and pointing at the man. The man continued to mumble, "I have to leave, I have to go." JG's father asked Joshua Valdez to block the man from leaving the church while he took JG into a classroom to ask him what had happened.

JG told his father that the man had told him that he wanted to show him something. JG explained that he and the man went into the boys' bathroom and the man told JG to get down on his knees and open his mouth. The man pulled down his own pants and underwear and stood in front of JG. JG saw the man's "private part" and thought the man was going to pee in his mouth.

As JG's father was talking to his son, Valdez was on the stairs and had his hand on the man's clothing to keep him from leaving. The man began rocking back and forth and mumbling, "[W]hy are they always messing with me? Why are they always doing this to me?" The man pushed Valdez and ran from him, escaping the church. The church's administrator put the bicycle that the man had brought inside the church into a locked room in the basement later that day. Lansing Police Department Officer Philip Nardone testified that he retrieved the bike and processed it into evidence.

## B. THE MAY 6, 2012 INCIDENT

The second incident occurred on May 6, 2012, when 12-year-old MK was playing in her backyard with her ten-year-old friend, IF. According to the girls, a man stopped on the sidewalk and asked if anyone wanted a "Looney Toons" statue. IF testified that she walked with the man to the backyard of a house a few doors down the street, where the man grabbed her by the wrist and pulled her into a garage. The man pulled a bed down from against the wall and laid her down on the mattress. IF testified that she tried to get up, but the man pushed her down on her back. The man lay on top of her with the entire front part of his body, except for his face, touching her. IF kicked the man in the "privates," and after she screamed for MK, the man ran off. MK described the man as a white man with glasses and a short beard wearing an orange, brown, and white striped shirt. IF described the man as a tall white man in his late 30s with short dark hair wearing light blue jeans and an orange and white striped shirt. IF gave a description of the man to Lansing Police Department Officer Paul Beasinger and led police to the house where the incident occurred. A search warrant was obtained for the address because the resident of the

house matched the physical description of the suspect. IF failed to identify the resident of the house in a photographic array, and police later eliminated him as a suspect.

## C. THE JULY 10, 2012 INCIDENT

The third incident occurred on July 10, 2012, at the downtown Capital Area District Library. AA, age seven, and her younger sister, age five, were playing on computers in the children's section of the library while their mother was across the hall looking at movies. A man came up to the girls and began speaking with them. The girls went to the stairwell with the man and followed him to the top of the stairs. AA's sister testified that the man reached down AA's pants and touched her "privates." According to AA, the man touched her on her front and back "private area." According to AA's sister, the man's pants were unzipped and she saw his "private part" hanging out. The man ran away when both girls screamed. According to AA, the man was wearing a shirt with a picture of "Stewie," a character from the animated television show Family Guy, on the front.

Library security guard Collin Blumenthal reviewed the library's security videotapes after the girls' mother told him that her daughters had been lured into the stairwell and sexually assaulted. Blumenthal testified that he was able to identify the suspect, who was wearing a black shirt with a graphic on it, jean shorts, and brown boots, and who had spiky brown hair (exactly as the girls had described to him). The video showed that the suspect entered the library at 7:36 p.m. and went immediately to the children's area. Blumenthal identified AA and her sister in the video in the children's area on the right side of the computers and the suspect on the left side of the computers. At 7:47 p.m., the suspect led the girls into the stairwell. At 7:50 p.m., the suspect left the building after the girls came out of the stairwell screaming.

## D. IDENTIFICATION OF A SUSPECT

Lansing Police Detective Elizabeth Reust testified that her review of the library video revealed that the suspect in AA's case matched the description of the suspects in JG's case and IF's case. Still photographic shots from the video were released to local media in an attempt to identify the suspect. Numerous people, including defendant's mother and his ex-girlfriend, contacted the police to identify defendant. After interviewing defendant, Reust arrested him. A search of defendant's residence resulted in the recovery of an orange, brown, and cream colored shirt. Police also recovered a shirt bearing a graphic of the Stewie character and a pair of boots. Defendant was charged in connection with the incident involving AA.

After defendant's arrest in AA's case, Reust explored whether defendant was connected to the incidents involving JG or IF because "we had three assaults involving a stranger in a very short period of time" and because the description of the suspect in those cases matched defendant's description. Reust learned from defendant's mother that defendant had a bicycle that had been given to him by his father. Reust contacted defendant's father and learned that he had purchased the bike from a bike shop in downtown Lansing. A search of the serial number of the bike found at the church revealed that the bike was registered to defendant's father.

Reust subsequently arranged for JG, IF, MK, and JG's father to separately participate in a corporeal lineup. JG's father identified defendant as the man from the church and IF identified

-3-

defendant as the man who had assaulted her. However, MK identified a different man. At that point, defendant was charged in connection with the incidents involving JG and IF.

Before trial, the prosecution notified defendant of its intent to introduce evidence of other acts under MCL 768.27a. The prosecution moved to admit other acts evidence involving sexual assaults upon minors MW (which resulted in a conviction) and LH (which did not),[1] in 2000 and 1999 respectively, in order to show propensity to commit sexual assaults upon children as well as to support the prosecution's claim that defendant is a sexually delinquent person. Following a hearing, the trial court ruled in part as follows:

> It's . . . undeniable that there is prejudice involved, but the probative value is so high that I can't say that the prejudice substantially outweighs the probative value. The Defendant's attorney said it best, it's a lot easier for the jury to decide that he did it this time if he did it before, and that's exactly what this statute envisions, that jurors will have full and complete pictures of someone's history and past, and that they can legitimately, according to the Supreme Court, consider propensity under this statute. And it does make it a lot easier for the jury to decide. Why, because it's highly probative. And for those reasons I will grant the People's motion to Admit all of the proposed evidence under MCL 768.27a.

The jury convicted defendant as described above. This appeal followed.

## II. OTHER ACTS EVIDENCE

Defendant first argues that the trial court erred by admitting other acts evidence under MCL 768.27a without properly considering the prejudicial effect of the evidence under MRE 403 by analyzing the factors set forth in *People v Watkins*, 491 Mich 450; 818 NW2d 296 (2012). He further argues that the prejudicial effect of the other acts evidence outweighed the probative value and, therefore, that the trial court erred by admitting the evidence. We disagree. This Court reviews a trial court's decision to admit evidence for an abuse of discretion. *People v Feezel*, 486 Mich 184, 192; 783 NW2d 67 (2010).

The prosecution notified defendant of its intent to introduce evidence of other acts under MCL 768.27a, which provides, "in a criminal case in which the defendant is accused of committing a listed offense against a minor, evidence that the defendant committed another listed offense against a minor is admissible and may be considered for its bearing on any matter to which it is relevant." Evidence is relevant if it has any tendency to make the existence of a fact that is of consequence to the action more probable or less probable than it would be without the evidence. MRE 401. A defendant's propensity to commit a crime makes it more probable that he committed the charged offense. *Watkins*, 491 Mich at 470. However, evidence offered under

---

[1] Although the prosecution's motion listed proposed witnesses it intended to call regarding LH's assault, it does not appear that any testimony or other evidence was actually admitted regarding that incident.

MCL 768.27a is still subject to MRE 403, which excludes relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." See *People v Uribe*, ___ Mich App ___; ___ NW2d ___ (Docket No. 321012), slip op at 9.

MRE 403 is not, however, intended to exclude all "damaging" evidence, because any relevant evidence will be damaging to some extent. *People v Mills*, 450 Mich 61, 75; 537 NW2d 909 (1995), mod on other grounds 450 Mich 1212 (1995). Instead, it "is only when the probative value is *substantially outweighed* by the danger of unfair prejudice that evidence is excluded." *Id*. (emphasis in original). Unfair prejudice exists where there is "a danger that marginally probative evidence will be given undue or presumptive weight by the jury" or "it would be inequitable to allow the proponent of the evidence to use it." *Id*. at 75-76. Thus, "other-acts evidence admissible under MCL 768.27a may not be excluded under MRE 403 as overly prejudicial merely because it allows a jury to draw a propensity inference." *Watkins*, 491 Mich at 487.

"In the specific context of evidence submitted under MCL 768.27a, 'the *Watkins* Court provided guidance to trial courts in applying . . . the balancing test of MRE 403.'" *Uribe*, slip op at 10, quoting, *People v Duenaz*, 306 Mich App 85, 99; 854 NW2d 531 (2014). To the end, the *Watkins* Court stated that the propensity inference of the evidence must be weighed in favor of the evidence's probative value. *Watkins*, 491 Mich at 487. Second, it provided an "illustrative, nonexhaustive list" of considerations that a trial court may take into account in determining whether to exclude the proffered evidence under MRE 403:

> (1) the dissimilarity between the other acts and the charged crime, (2) the temporal proximity of other acts to the charged crime, (3) the frequency of the other acts, (4) the presence of intervening acts, (5) the lack of reliability of the evidence supporting the occurrence of the other acts, and (6) the lack of need for evidence beyond the complainant's and the defendant's testimony. [*Duenaz*, 306 Mich App at 99-100, quoting *Watkins*, 491 Mich at 487-488.]

When weighing the probative value of other acts evidence, courts should also consider the extent to which the other acts evidence supports the victim's credibility and rebuts any defense attack on the victim's credibility. *Watkins* at 491-492.

Although the trial court did not specifically reference *Watkins*, the court recognized its duty under MRE 403 to weigh the probative value of defendant's past conviction and other acts against the potential for unfair prejudice, and it determined that the record before it provided no reason to exclude the evidence. Defendant contends that two of *Watkins* considerations, as applied to the proffered evidence, demonstrate that the prejudicial effect of the evidence outweighs its probative value. We disagree.

First, he challenges the temporal proximity of the other act to the charged crimes. MCL 768.27a does not contain a temporal limitation, and the remoteness of the other act affects the weight of the evidence rather than its admissibility. *People v Brown*, 294 Mich App 377, 387; 811 NW2d 531 (2011). Moreover, while defendant's sexual assault of MW occurred

approximately 12 years before that of the current victims, defendant was incarcerated for 10 of those years. The sexual assaults in this case occurred less than two years after defendant's release from prison. The time period between the earlier assault and the assaults for which defendant was charged in the instant case does not create prejudice that outweighs the probative value of the evidence, which includes defendant's propensity to commit sexual crimes against young children, the similarity of his actions, and the necessity to support the reliability of the evidence. *Watkins*, 491 Mich at 486-488.

Second, defendant challenges the similarity of the other acts and the charged crimes. A panel of this Court has recently held that "[w]hether an act is similar or dissimilar to a charged offense does not matter for the purposes of MRE 403, which, as noted, looks to whether otherwise relevant evidence is overly sensational or needlessly cumulative. More importantly, MCL 768.27a clearly mandates the admissibility of *any evidence* of a 'listed offense,' regardless of similarity. Indeed, the similarity element is presumed in the mandate to admit evidence of a listed offense." *Uribe*, slip op at 12 (emphasis in original). In this case, regardless of whether similarity of acts is appropriately considered, the acts are not so dissimilar as to render the admissibility of the "other acts" evidence unfairly prejudicial under a Rule 403 analysis. Defendant contends that the other acts involved a relative rather than a stranger and that the "approach" and the "spiriting away to another location" was different in the present case. However, although the acts were not precisely the same, defendant's acts toward MW were similar to the charged acts against the current victims. The victims were all under 10 years of age. The assaults occurred during the day and in locations where the victims' relatives were nearby and defendant could potentially have been caught engaging in the assaultive behavior. Additionally, all of the assaults occurred either in defendant's home or in close proximity to defendant's home. The alleged dissimilarity of the acts does not support a finding of unfair prejudice.

Defendant makes no specific argument that other considerations listed in *Watkins* render the other acts testimony inadmissible under MRE 403. Nonetheless, the balance of the *Watkins* considerations weighs against a finding of unfair prejudice because defendant's statement to police revealed that he regularly sexually assaulted MW and the evidence supporting the prior conviction was reliable. Further, there was a need for the other acts evidence beyond the victims' testimony since there was no physical evidence or, due to the nature of the crimes, other eyewitness testimony to directly support the young victims' renditions of events or to enhance their credibility.

Finally, defendant does not explain how the highly probative value of the other acts evidence would be substantially outweighed by the danger of unfair prejudice, especially in light of the "clearly stated public-policy of this state—to protect children from sexual predators . . . ." *Uribe*, slip op at 12-13; MRE 403. The other acts evidence was probative of defendant's intent to engage in the charged conduct and thus provided further evidence that defendant had a

-6-

propensity to sexually assault young children. *Watkins*, 491 Mich at 470. The trial court did not abuse its discretion by admitting the other acts testimony.[2]

## B. PROSECUTORIAL ERROR[3]

Defendant argues that the prosecution improperly shifted the burden of proof onto him to prove his innocence, and improperly commented on defendant's right to remain silent, when the prosecutor stated during her rebuttal closing argument that "[t]here has been no evidence given to you to contradict that it was anyone other than him who did these things." Claims of prosecutorial error are reviewed on a case-by-case basis to determine whether the defendant was denied a fair trial. *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). Error requiring reversal will not be found if the prejudicial effects of a prosecutor's comments could have been cured by a timely instruction. *People v Mayhew*, 236 Mich App 112, 123; 600 NW2d 370 (1999).

"Although a prosecutor may not argue facts not in evidence or mischaracterize the evidence presented, the prosecutor may argue reasonable inferences from the evidence." *People v Watson*, 245 Mich App 572, 588; 629 NW2d 411 (2001). Further, the prosecutor may fairly respond to defense arguments. *People v Lawton*, 196 Mich App 341, 353-354; 492 NW2d 810 (1992).

In his closing argument, defense counsel argued that defendant was misidentified in the JG and IF cases, and with respect to AA's case he argued that the evidence showed only that he was at the library on the day of the incident. Defense counsel argued that defendant is "a natural suspect because of the fact that he was convicted in 2000 whether or not the descriptions add up with one another, or individually and in time." Defense counsel further argued that the prosecution's case was "woefully thin" and that "my client, because of . . . the offense he was convicted of in 2000 is immediately under the cloud of suspicion whenever there's an offense like this."

---

[2] Further, any danger of unfair prejudice was reduced when the trial court instructed the jury consistent with CJI2d 20.28a regarding the proper use of MCL 768.27a evidence. As noted in *Watkins*, 491 Mich at 480, this instruction is a "tool" that can be used to limit prejudice by "ensur[ing] that the jury properly employs that evidence." Jurors are presumed to follow their instructions, *People v Unger*, 278 Mich App 210, 235 - 236; 749 NW2d 272 (2008), and thereby only convict if they believe he committed the charged offense, not for any past misdeed.

[3] Courts and litigants frequently have referred to claims such as that raised by defendant as "prosecutorial misconduct." This Court has recently stated that "the term 'misconduct' is more appropriately applied to those extreme . . . instances where a prosecutor's conduct violates the rules of professional conduct or constitutes illegal conduct," and concluded that claims "premised on the contention that the prosecutor made a technical or inadvertent error at trial" are "more fairly presented as claims of 'prosecutorial error.' " *People v Cooper*, __ Mich App __; __ NW2d __ (2015) (Docket No. 318159), slip op at 7 (citation omitted).

The prosecutor argued in part during her rebuttal argument as follows:

What [defense counsel] argues is a woefully inadequate case regarding identification, and the People's position is actually the complete opposite. When you look at the evidence as a whole in the entirety, all of the similarities, all of the things that connect the Defendant, the bike, the video, the shirt [IF] describes being found at his residence, the location of his residence, everything, it only points to [defendant]. And other suspects that they had was [sic] eliminated.

* * *

He is the person responsible in all these cases, and I'm not just saying that, as [defense counsel] suggested, to say he did this, he did that. The evidence has shown that. The facts have shown that. *There has been no evidence given to you to contradict that it was anyone other than him who did these things.*

Defendant's challenge is to the italicized portion of the prosecutor's comments.

Defendant's theory of the case was that defendant was misidentified and was innocent of the charged offenses. The record reveals that the prosecutor's comments were proper argument in response to the defense's arguments and theory of the case. The prosecutor summarized the identification evidence and then stated that no evidence was given to the jury to contradict the facts. On the whole record, the prosecutor's argument did not shift the burden of proof onto defendant to prove his innocence. The challenged comment was merely a proper argument that the jury need not believe the defense's version of events. See *People v Fields*, 450 Mich 94, 108; 538 NW2d 356 (1995). Additionally, the trial court instructed the jurors that they were the sole judges of the evidence and that the attorneys' statements and arguments were not evidence. The court also instructed that the prosecution had the burden to "prove each element of the crime beyond a reasonable doubt" and that "[t]the defendant is not required to prove his innocence or do anything." Jurors are presumed to follow their instructions. See *People v Unger*, 278 Mich App 210, 235 - 236; 749 NW2d 272 (2008).

Defendant also contends that the prosecutor's statement was an improper comment on defendant's silence. In Michigan, a criminal defendant is protected by both statute and the constitution from having his silence at trial used against him. MCL 600.2159 provides that a criminal defendant's "neglect to testify shall not create any presumption against him, nor shall the court permit any reference or comment to be made to or upon such neglect." Proscribing the prosecution from "comment[ing] on a defendant's failure to take the stand . . . is an important corollary to the Fifth Amendment privilege against self-incrimination." *People v Guenther*, 188 Mich App 174, 177; 469 NW2d 59 (1991), citing *Grifin v California*, 380 US 609, 615; 85 S Ct 1229; 14 L Ed 2d 106 (1965).

In *People v Perry*, 218 Mich App 520, 538; 554 NW2d 362 (1996), this Court held that "a prosecutor's statement that certain inculpatory evidence is undisputed does not constitute a comment regarding the defendant's failure to testify, particularly where someone other than the defendant could have provided contradictory testimony." However, even where the defendant is the only person "who could have provided contradictory testimony," courts have found such

commentary proper. *Guenther*, 188 Mich App at 177. See also *People v Parker*, 307 Mich 372, 376; 11 NW2d 924 (1943); see also *People v Earl*, 299 Mich 579, 583; 300 NW 890 (1941); *People v Lasenby*, 107 Mich App 462, 463; 309 NW2d 572 (1981); *People v Jacobini*, 34 Mich App 84, 86; 190 NW2d 720 (1971).[4]

Here, the prosecutor's isolated comment in rebuttal was not of such a character that the jury would necessarily take it as remarking on defendant's failure to testify. Rather, the comment "merely pointed out the weakness in defendant's case." *Fields*, 450 Mich at 112. The defense theory was that the victims misidentified defendant and that defendant was "rounded up" as a suspect because he was a convicted sex offender. The prosecutor pointed out that defendant was not identified as a suspect until his mother contacted the police and identified him; the prosecutor told the jury to look at all of the evidence and argued that the evidence supported a finding beyond a reasonable doubt that defendant "did these things" and that no evidence contradicted the victims' identifications of defendant as the perpetrator. The prosecutor made no direct comment regarding defendant's decision not to testify. The prosecutor's comment was not "of such a character that the jury would 'naturally and necessarily' take" it as remarking on defendant's failure to testify. *Id*.

Additionally, the trial court instructed the jury that it could not consider the fact that defendant did not testify. To the extent that the prosecutor's comment had any prejudicial effect, these instructions were sufficient to protect defendant's rights. *Unger*, 278 Mich App at 235 – 236; *Earl*, 299 Mich at 583; *Jacobini*, 34 Mich App at 86-87.

## III. COURT COSTS

Defendant challenges the imposition of court costs under *People v Cunningham*, 496 Mich 145; 852 NW2d 118 (2014). At that time of sentencing, this Court's decision in *People v Sanders*, 296 Mich App 710, 715; 825 W2d 87 (2012), provided that the trial court could impose generally reasonable costs under MCL 769.1k(1)(b)(*ii*). However, the Michigan Supreme Court overruled *Sanders* in *Cunningham*, 496 Mich at 158, and held "that MCL 769.1k(1)(b)(*ii*) does not provide courts with the independent authority to impose 'any cost.' Instead, . . . MCL 769.1k(1)(b)(*ii*) provides courts with the authority to impose only those costs that the Legislature has separately authorized by statute."

---

[4] But see *People v Centers*, 141 Mich App 364, 377-378; 367 NW2d 397 (1985), rev'd in part on other grounds 453 Mich 882 (1996) ("[T]he bounds of proper argument are exceeded by a prosecutor's argument that his evidence was uncontradicted or unexplained if contradiction or explanation could only come from the defendant."); *People v Payne*, 131 Mich 474, 480; 91 NW 739 (1902) (finding reversible error when the prosecutor argued that only the defendant, the victim, "and the all seeing eye of God" saw what occurred and no one (i.e., the defendant) denied that the offense took place).

Following the issuance of *Cunningham*, the Legislature amended MCL 769.1k; the amended statute became immediately effective on October 17, 2014. See 2014 PA 352. The enacting sections of 2014 PA 352 provide:

Enacting section 1. This amendatory act applies to all fines, costs, and assessments ordered or assessed under section 1k of chapter IX of the code of criminal procedure, 1927 PA 175, MCL 769.1k, before June 18, 2014, and after the effective date of this amendatory act.

Enacting section 2. This amendatory act is a curative measure that addresses the authority of courts to impose costs under section 1k of chapter IX of the code of criminal procedure, 1927 PA 175, MCL 769.1k, before the issuance of the supreme court opinion in *People v Cunningham*, 496 Mich 145 (2014).

This act is ordered to take immediate effect.

The amended version of MCL 769.1k(1)(b) states in relevant part:

(b) The court may impose any or all of the following:

(*i*) Any fine authorized by the statute for a violation of which the defendant entered a plea of guilty or nolo contendere or the court determined that the defendant was guilty.

(*ii*) Any cost authorized by the statute for a violation of which the defendant entered a plea of guilty or nolo contendere or the court determined that the defendant was guilty.

(*iii*) Until 36 months after the date the amendatory act that added subsection (7) is enacted into law, any cost reasonably related to the actual costs incurred by the trial court without separately calculating those costs involved in the particular case, including, but not limited to, the following:

(A) Salaries and benefits for relevant court personnel.

(B) Goods and services necessary for the operation of the court.

(C) Necessary expenses for the operation and maintenance of court buildings and facilities.

(*iv*) The expenses of providing legal assistance to the defendant.

(*v*) Any assessment authorized by law.

This Court has recently examined a trial court's authority to impose court costs in a similar case. In *People v Konopka*, ___ Mich App ___; ___ NW2d ___ (2015) (Docket No. 319913); slip op at 1, the trial court ordered the defendant to pay court costs in the amount of

$500. This Court considered the defendant's challenges to the imposition of court costs and opined as follows:

> [T]he trial court's cost award is authorized by the amended version of MCL 769.1k(1)(b)(*iii*). This amended version became effective on October 17, 2014, and applies to all fines, costs, and assessments under MCL 769.1k before June 18, 2014, and after the effective date of the amendatory act. 2014 PA 352. The amended act was a curative measure to address the authority of courts to impose costs under MCL 769.1k before the issuance of *Cunningham*. 2014 PA 352. " 'When a new law makes clear that it is retroactive, an appellate court must apply that law in reviewing judgments still on appeal that were rendered before the law was enacted, and must alter the outcome accordingly.' " *Mayor of Detroit v Arms Technology, Inc*, 258 Mich App 48, 65; 669 NW2d 845 (2003), quoting *Plaut v Spendthrift Farm, Inc*, 514 US 211, 227; 115 S Ct 1447; 131 L Ed 2d 328 (1995) (addressing Congress's authority to revise the judgments of federal courts). . . .
>
> The amended version of MCL 769.1k(1)(b)(*iii*) provides for an award of certain costs that are *not* independently authorized by the statute for the sentencing offense, in contrast to the amended version of MCL 769.1k(1)(b)(*ii*), which provides that a court may impose "[a]ny cost authorized by the statute for a violation of which the defendant entered a plea of guilty or nolo contendere or the court determined that the defendant was guilty." This Court must give effect to every word, phrase, and clause and avoid an interpretation that would render any part of the statute surplusage or nugatory." *Cunningham*, 496 Mich at 154 (quotation marks and citation omitted). MCL 769.1k(1)(b)(*ii*) would be rendered surplusage if MCL 769.1k(1)(b)(*iii*) merely provided for the imposition of costs that were separately authorized by the statute for the underlying offense, given that MCL 769.1k(1)(b)(*ii*) *already* provides for the imposition of such costs. We therefore conclude that MCL 769.1k(1)(b)(*iii*) authorizes the imposition of costs independently of the statute for the sentencing offense. [*Konopka*, ___ Mich at ___; slip op at 6-7 (emphasis in original).]

*Konopka* concluded that "[i]n light of the adoption of 2014 PA 352, the trial court's imposition of costs was not erroneous." *Id*. at ___; slip op at 7. "However," the Court continued, "although the costs imposed in this case need not be separately calculated, MCL 769.1k(1)(b)(*iii*), the trial court did not establish a factual basis, under the subsequently amended statute, for the $500 in costs imposed." *Id*. at ___; slip op at 7-8.

As in *Konopka*, if the Legislature had not amended MCL 769.1k, the cost award in this case would have been invalid under *Cunningham*.[5] However, the trial court's award is authorized by the amended version of MCL 769.1k(b)(*iii*) because, as in *Konopka*, this case was

---

[5] None of the statutes under which defendant was convicted authorize the imposition of court costs.

on appeal when the amended version of MCL 769.1k was adopted, and, as in *Konopka*, the costs in this case were imposed before June 18, 2014. Although defendant has not challenged the lack of reasoning for the costs below as did the defendant in *Konopka*, this Court cannot determine whether the costs imposed were reasonably related to the actual costs as required by MCL 769.1k(1)(b)(*ii*) because the trial court provided no factual basis for the costs imposed. Consequently, we remand to the trial court for further proceedings to establish a factual basis for the $500 in costs imposed, under MCL 769.1k(1)(b)(*iii*), or to alter that figure, if appropriate.

We affirm defendant's convictions and sentences, and remand the case to the trial court for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Mark T. Boonstra
/s/ Henry William Saad
/s/ Christopher M. Murray